Robert Lee OWENS, Appellant,

v.

STATE of Indiana, Appellee.

No. 1280S455.

Supreme Court of Indiana.

Feb. 16, 1982.

Richard P. Schaumann, Michigan City, for appellant.

Linley E. Pearson, Atty. Gen., Michael G. Worden, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant, Robert Lee Owens, was charged with and convicted of murder and sentenced to life imprisonment. In this appeal he contends that various statements made by him to police interrogators were erroneously admitted and that several photographs of the deceased victim were likewise erroneously admitted. The charges stemmed from a break-in of the prison laundry at the Indiana State Prison and the killing of the laundry superintendent. At the time of the crime appellant was an inmate of the prison.

## I.

During interrogation in the prison on January 11, 1977, appellant gave an incriminating statement implicating himself in the burglary of the laundry in the course of which the victim Rice was killed. This statement was admitted over his objection that there was no adequate advisement of rights prior thereto comporting with the requirements set down in *Miranda v. Arizona*, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

On December 29, 1976, shortly after the killing of Rice, appellant, a prisoner, was taken into custody, confined in the IDU unit, a high security section, and subjected to an interrogation during which he gave no incriminating statements. Prior to this initial interrogation, appellant was read his rights as required by *Miranda*, and signed a written waiver of rights form, the efficacy of which is not challenged. On January 4, 1977, appellant was again interrogated. During this interrogation he executed waiver of rights as part of a consent to take a polygraph examination. Again, no incriminating statements were made. On January 11, 1977, prior to giving his first inculpatory statement, appellant was told by the interrogator that his constitutional rights were

still in effect, and appellant responded that he was aware of this.

Appellant argues that by reason of the lapse of thirteen days between the first full advisement and the statement, the austere conditions in the IDU unit, and the multiple and prolonged interrogations during the period rendered the advice of rights insufficient. In *Miranda v. Arizona, supra,* the United States Supreme Court said:

"The Fifth Amendment privilege is so fundamental to our system of constitutional rule and the expedient of giving an adequate warning as to the availability of the privilege so simple, we will not pause to inquire in individual cases whether the defendant was aware of his rights without a warning being given. Assessments of the knowledge the defendant possessed, based on information as to his age, education, intelligence, or prior contact with authorities, can never be more than speculation; a warning is a clearcut fact. More important, whatever the background of the person interrogated, a warning at the time of interrogation is indispensable to overcome its pressures and to insure that the individual knows he is free to exercise the privilege at that point in time." 384 U.S. at 468–469, 86 S.Ct. at 1625.

This passage can be read as requiring a fresh advisement of rights prior to each separate session of interrogation. In *Michigan v. Mosley,* (1975) 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313, the Court strongly indicated that a second interrogation, following a first which had been terminated because of an assertion of the desire not to answer questions, must be preceded by full and complete *Miranda* warnings. In *Westover v. United States,* (1965) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, a companion case with *Miranda,* the Court held that the product of a second interrogation in fact preceded by full *Miranda* warnings is inadmissible if that second interrogation is a continuing part of a first interrogation which was initiated without any warnings whatever. However, here, we have no assertion by appellant of the wish not to answer questions or to have counsel, and the first interrogation was preceded by a full warning and effective waiver.

This Court has previously considered the question presented. We have held that there is no per se requirement that *Miranda* warnings be repeated in these circumstances. *Grey v. State,* (1980) Ind., 404 N.E.2d 1348; *Conrad v. State,* (1974) 262 Ind. 446, 317 N.E.2d 789. The purpose of the *Miranda* advisement is to make the suspect aware of his privilege against self-incrimination, right to counsel, and right to discontinue interrogation. We understand the law to be that where at the commencement of custodial interrogation, the suspect has been given an advisement and made a waiver in accordance with the guidelines in *Miranda,* that advisement need not be repeated so long as the circumstance attending any interruption or adjournment of the process is such that the suspect has not been deprived of the opportunity to make an informed and intelligent assessment of his interests involved in the interrogation, including the right to cut off questioning. *Michigan v. Mosley, supra.* Upon the record presented here, appellant was made fully aware on December 29, 1976, of his rights before any questioning about the Rice killing. He voluntarily and with full knowledge of the consequences thereof, waived those rights and subjected himself to interrogation. On January 4, 1977, six days later, these same rights were brought to his attention, and he again relinquished them. On January 11, 1977, prior to resumption of his questioning he was given a general reminder of those rights by the interrogators, and made the response that he was still aware of those rights. During this time he was held in the IDU unit, having only one meal a day, institutional radio, bed without mattress, sink and toilet. The record also reveals however that appellant had spent a four-month period from August, 1976 to the first of December, 1976 in similar surroundings as punishment for institutional infractions, and therefore these conditions, experienced by him, would not significantly diminish his capacity to appreciate his interests and how they would be affected by the

resumption of interrogation. Upon this record the trial court was warranted in concluding to a certainty beyond a reasonable doubt, that the guidelines set down in the *Miranda* case for the protection of constitutional rights were met, and that appellant's statement was admissible.

## II.

■ Appellant also contends that his incriminating statement of the 11th of January was inadmissible as the product of promises of leniency by the interrogators. The interrogators upon testifying denied that they had made the promises of help and leniency identified by appellant in his testimony, but did not deny having told him of the statements of other inmates against him given in return for tendered benefits. Appellant testified at trial that he was innocent of the charges. He admitted making the incriminating statements on the occasion of the January 11 interrogation, but asserted that the statements were false. When asked by his counsel why he had given these false incriminating statements, he candidly responded:

"[S]o I thought, why wouldn't I take a chance. For that reason I could say something to that effect."

The trier of fact would be warranted in concluding that appellant incriminated himself and identified his accomplices not in a response to a promise of lenience, but in the self-generated hope that he had a chance to get like treatment if he turned against them.

The record discloses that the January 11 interrogation lasted only twenty to thirty minutes, that the *Miranda* guidelines were satisfied, that the conditions of confinement were austere, but not uncomfortable or cruel, and that the questioning by the interrogators was proper. The trier of fact was warranted in concluding to a certainty beyond a reasonable doubt that appellant's statements of January 11 to his interrogators were the product of a free choice and rational intellect, rather than coercion or improper inducement, and that they were voluntary.

## III.

■ As heretofore mentioned, appellant was questioned on January 4. Over objection, the trial court permitted the two interrogators present at the time to testify that in response to questioning, appellant denied any involvement in the crime. The first interrogator to testify, Officer McCarthy, stated that before the denial of complicity was made he told appellant that his rights were still in effect, and that appellant indicated he understood this. The second interrogator to testify, Officer Pinnell, stated that on this January 4 occasion, appellant was advised of his *Miranda* rights, and executed a written waiver form. Appellant contends that it was error to permit his statement to be introduced, since the written waiver given at the time was a polygraph waiver, and his statement was not given during the polygraph examination, but immediately before or after it, outside the scope of the examination itself. This contention ignores pertinent evidence in the record that appellant gave a full and effective waiver prior to his first interrogation on December 29 and acknowledged the reminder by Officer McCarthy on January 4, prior to making this challenged statement. This pertinent evidence was substantial and sufficient to warrant the trier of fact in concluding beyond a reasonable doubt that appellant relinquished his *Miranda* rights voluntarily before making the statement. The statement was properly admitted.

## IV.

State's Exhibits Nos. 13, 14 and 15, are color photographs of the head of the victim taken at the autopsy table. One is a frontal-facial view, one is a left-lateral view, and the third is of the top and back of the head. They were admitted over objection during the testimony of the pathologist who opined that the cause of death was multiple massive skull fractures, laceration of the brain, and subarachnoid hemorrhage. They were accompanied by State's Exhibits Nos. 19 through 21, which were diagrammatic sketches depicting scalp lacerations and

**112**

skull fractures. Previous to the introduction of these three color photographs, two black and white photographs showing the head of the victim covered with blood were admitted. Appellant contends that the introduction of Exhibits 13, 14, and 15, over objection that they were unnecessarily inflammatory was error.

Photographs depicting the corpse of the victim in a homicide prosecution are for the most part relevant when they show trauma sustained at the time of attack. Such exhibits are admissible unless their relevant quality is outweighed by their tendency to inflame and impassion the jury against the defense. *Webster v. State*, (1981) Ind., 426 N.E.2d 1295. It is apparent from a comparison of Exhibits 13, 14, and 15, with earlier admitted photographs of the body that much of the dried blood and debris was cleaned from the head. This preparation renders the body much less disturbing and makes possible the identification of individual cuts and marks. No alteration of the head through autopsy is depicted. The eyes are closed and the face appears in repose. They are nonetheless shocking. They are, however, not simply of the same level of relevance as the preceding black and white photographs. Those prior photos depicted the body as found, and individual cuts and contusions were not discernible. These color photographs provided the basis for the diagrams and were of much higher relevance with regard to their usefulness in determining the exact cause of death. They were less disturbing than the first photographs, and more pertinent to that issue. We find that the shocking character of these photographs, that is, their tendency to so inflame the jurors against the accused as to diminish their ability to fairly consider all the evidence at trial, was not great and did not outweigh their relevant character.

The conviction is affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.