**Darrin W. PARTLOW, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 182S28.

Supreme Court of Indiana.

Sept. 22, 1983.

Arvin R. Foland, Noblesville, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant Darrin W. Partlow was convicted of Murder, Ind.Code § 35–42–1–1 (Burns Repl.1979), and Robbery, Ind.Code § 35–42–5–1 (Burns Repl.1979), at the conclusion of a jury trial in Montgomery Circuit Court on July 3, 1981. Partlow was given forty (40) years imprisonment for the murder and thirty (30) years imprisonment for the robbery; both sentences were ordered to be served consecutively. Partlow now appeals.

Defendant Partlow raises eleven issues on appeal, concerning:

1) whether the juvenile court properly acquired jurisdiction and properly waived the defendant to criminal court;

2) whether the trial court erred in its discovery orders;

3) whether the trial court erred in denying the defendant's motion to suppress certain evidence;

4) whether the trial court erred in denying the motion for sequestration of the jury and individual examination of the jurors during the *voir dire;*

5) whether the trial court erred in denying the motion to dismiss the death penalty count;

6) whether the trial court erred in ruling on the admission of certain evidence;

7) whether the trial court erred in denying the motion for mistrial;

8) whether the trial court erred in denying the motion for judgment on the evidence and whether there was sufficient evidence for the convictions;

9) whether the trial court erred by giving the State's tendered instructions 1 and 2;

10) whether the trial court erred by refusing the defendant's tendered instruction 1, and in modifying the defendant's tendered instruction 3; and,

11) whether the trial court erred in denying the defendant's petition to be let to bail.

Elizabeth Moore was found dead in her home in Sheridan, Indiana, on November 21, 1980. Her throat had been cut by a sharp weapon and a pencil had been jabbed in her throat. A police investigation ensued and local civic groups also assisted in searching for evidence. Two of the defendant's brothers found the victim's purse wrapped up in a sweater jacket. The brothers informed the police that the sweater jacket was similar to the one their brother, Darrin Partlow, had been wearing on the night of the murder. The brothers also related some other information that clearly made the defendant a suspect in the case. Armed with this information, the police went to the defendant's home in order to ask some additional questions. After the defendant made a taped statement, the police placed him under arrest.

I

The defendant claims that the juvenile court did not gain jurisdiction of him because an initial hearing, pursuant to Ind. Code § 31–6–4–13(b) (Burns Repl.1980), was not held. The record shows that this is true. However, at the detention hearing held on November 26, 1980, the juvenile court advised the defendant of his right to remain silent and to not testify, of his right to an attorney and, in fact, appointed an attorney at public expense to represent him. The defendant was also told that probable cause had been found to permit the filing of charges of murder and robbery. The juvenile court also found that it was in the defendant's best interest to keep him in juvenile detention. The State contends that an initial hearing was not required under the facts of this case since it was proper to hold a waiver hearing before an initial hearing became necessary. We agree with the State on this issue.

Ind.Code § 31–6–4–13 sets out the procedures to be followed once a petition alleging delinquency has been filed. Section (b) provides that an initial hearing shall be held on each petition. Section (c) provides for a determination by the juvenile court of whether or not counsel has been obtained by the juvenile and also provides for the appointment of counsel, which was done here. Section (d) provides that the court shall determine whether the prosecutor seeks to obtain a waiver of jurisdiction under Ind.Code § 31–6–2–4. Section (d) further provides that if waiver is sought, the juvenile court may not accept an admission or denial of the allegations from the juvenile under subsection (i) and shall schedule a waiver hearing and advise the juvenile according to section (e). Succeeding sections set out the procedures to be followed if the juvenile is to remain in the juvenile court and generally provide for all procedures to be taken by the juvenile court other than the handling of a waiver petition. A logical interpretation of the statute and all other statutes in the juvenile code would indicate that where a waiver of jurisdiction is sought, all other proceedings directed toward a determination of delinquency would cease until that issue has been resolved. That was the procedure the juvenile court followed here. It would logically follow that if the juvenile court decides not to waive the juvenile to criminal court, then the sections providing for the procedures to be followed in the juvenile court would come into play and at that time an initial hearing could be held and all

other procedures set out in 31–6–4–13 would be followed.

■ Ind.Code § 31–6–2–4 is concerned with the waiver of jurisdiction by the juvenile court. Section (c) reads as follows:

Upon motion of the prosecutor and after full investigation and hearing, the juvenile court shall waive jurisdiction if it finds that:

(1) The child is charged with an act that would be murder if committed by an adult;

(2) There is probable cause to believe that the child has committed the act; and

(3) The child was ten [10] years of age or older when the act charged was allegedly committed;

unless it would be in the best interests of the child and of the safety and welfare of the community for him to remain within the juvenile justice system.

Ind.Code §§ 31–6–7–6(a), (b) and (c) also set specific time limitations in which the juvenile court must take certain actions. Included among these actions is the waiver hearing but the initial hearing is not involved in these provisions. These time limitations will be considered later in this issue. When the juvenile court set the waiver hearing here, it informed the parties that it appeared there was probable cause that the defendant had committed the crime of murder and that therefore it would probably have no alternative except to waive jurisdiction. That matter was accordingly pursued. It appears that the initial hearing is to take the place of what is commonly called an arraignment in criminal court. Since no trial is to be held in the juvenile court if waiver is granted, then, of course, that proceeding is not necessary since the action will move to criminal court where there will be an arraignment on the trial to take place there. We note again that the juvenile court did advise the defendant of his rights and did, in fact, appoint counsel for him. There is no denial of these facts. The juvenile court followed the procedures pursuant to the juvenile code and the trial court properly obtained jurisdiction over this defendant.

■ The defendant also contends that the juvenile court did not obtain jurisdiction because he was not properly taken into custody. Defendant's argument seems to be based on his claim that he was actually placed under arrest when the police came into his home and further claims that they had no probable cause to come into his home or to arrest him. In the first place, it does not appear that the defendant was taken into custody at the time the police came to his home and, in fact, was not placed under arrest until after he had given his statement at the police station. The police did come into his home without a warrant but they entered upon invitation of the family and their entrance was not illegal or improper. They were admitted into the home and in fact were invited to sit down and members of the family, including the defendant and his mother, openly agreed to talk to them and further agreed to accompany them to the police station for purposes of further discussion. Furthermore, Ind.Code § 31–6–4–4(b) states: "A child may be taken into custody by any law enforcement officer acting with probable cause to believe that the child has committed a delinquent act." The police at this time had information that gave them probable cause to go to the defendant's home and, in fact, take him into custody at that time, although they did not do so.

■ Defendant further argues that the court erred in exercising jurisdiction over him because no copy of the preliminary intake report was sent to the prosecutor as required by Ind.Code § 31–6–4–7(e). This argument, however, was not raised below in the defendant's motion for discharge and his arguments on appeal therefore are predicated upon grounds different than those raised in the lower court and we must consider this issue waived. *Davidson v. State,* (1982) Ind., 442 N.E.2d 1076; *Ballard v. State,* (1974) 262 Ind. 482, 318 N.E.2d 798. The record does show, however, that the intake officer did file a preliminary inquiry dated December 3, 1980.

Finally, the defendant claims there was a loss of jurisdiction because of the failure to file the delinquency petition within seven days after his arrest and the failure to hold the waiver hearings within twenty days after the delinquency petition was filed. Ind.Code §§ 31–6–7–6(a) and (b) read as follows:

> (a) If the child is in detention, a petition alleging delinquency must be filed within seven [7] days (*excluding Saturdays, Sundays, and legal holidays*) after he is taken into custody.

> (b) If the child is in detention and a petition has been filed, either a fact-finding hearing or a waiver hearing must be commenced within twenty [20] days (*excluding Saturdays, Sundays, and legal holidays*) after the petition is filed. If the child is not in detention, the hearing must be commenced within sixty [60] days (*excluding Saturdays, Sundays, and legal holidays*) after the petition is filed. (emphasis added)

The defendant was taken into custody on November 24, 1980. The delinquency petition was filed on December 3, 1980. Thursday, November 27, 1980, and Friday, November 28, 1980, were legal holidays. This was the Thanksgiving holiday. November 29, and 30, were on the weekend. Thus, excluding holidays and the weekend, the delinquency petition was filed within five (5) days from the time the defendant was taken into custody. As for the waiver hearing, the delinquency petition was filed on December 3, 1980, and the waiver hearing was held on January 6, 1980. The Christmas holiday was December 25 and 26, 1980, and the New Year holiday was January 1 and 2, 1981. Excluding those holidays and the weekends, the waiver hearing was held on the twentieth day after the delinquency petition was filed. The juvenile court's actions were timely and no error is presented on this issue. The defendant further claims the court did not make proper findings in its waiver order. The record shows, however, that the court specifically found that the defendant was over ten years of age, that the offenses charged would include murder, and that there was probable cause

to believe the defendant committed the acts. The court further found that it was in the defendant's best interest and in the interest of the safety and welfare of the community for the defendant to leave the juvenile system and that the defendant was beyond rehabilitation in the juvenile system. These are proper and adequate findings under the pertinent statutes. Ind.Code § 31–6–2–4(c); *Trotter v. State,* (1981) Ind., 429 N.E.2d 637. The juvenile court properly acquired jurisdiction over this defendant and properly waived jurisdiction to criminal court.

II

Defendant claims the trial court erred in its discovery order because the defendant was ordered by the trial court to give the State a summary of the testimony of his witnesses. He claims that this order required him to hand over the defense counsel's work product and was therefore improper and prejudicial. The State contends, however, and the record indicates that its motion for discovery, asking for an abstract of the witnesses' testimony, used the same language that the defendant's motion for discovery had used. It appears the State was asking for the same discovery from the defendant that the State had been asked for and had furnished to the defendant.

This Court has recognized that reciprocity is the key element in discovery. *State ex rel. Meyers v. Tippecanoe Superior Court,* (1982) Ind., 438 N.E.2d 989; *Spears v. State,* (1980) Ind., 403 N.E.2d 828. However, "the mere fact [that] the other side in a criminal case is compelled to divulge the same or substantially similar information does not necessarily mean the information sought is discoverable." *State ex rel. Meyers, supra,* 438 N.E.2d at 990. We held that reciprocal discovery does not give either party the right to compel the other to "lay bare its case in advance of trial. . . ." *Bernard v. State,* (1967) 248 Ind. 688, 692, 230 N.E.2d 536, 540.

The defendant argues that giving the State the list of witnesses and an ab-

stract of their testimony violates the holding of *Spears v. State, supra*. In *Spears,* we held that an attorney's work product in a criminal matter is not discoverable so long as the work product objection is timely made. In this case, however, the trial court's order did not require that the defendant divulge a portion of the work product. The defendant supplied the State with a list of the witnesses and a short abstract of the general nature of each witness' testimony. This is vastly different from the situation in *State ex rel. Meyers, supra,* where the trial court ordered the relator to provide a "list of State's witnesses and each witness' expected testimony with respect to each essential element of each offense charged." *Id.* 438 N.E.2d at 990. That order clearly forced disclosure of the work product. In the matter at hand, the prosecution did not request any statements obtained in the investigation of the case, nor was there any request for memoranda or reports about the case; the supplied discovery merely provided the State with a list of the defense witnesses and the general nature of their testimony. The material requested and provided did not fall within the work product doctrine. We find no error on this issue.

### III

Defendant Partlow filed a motion to suppress certain statements he made to the police. Partlow claims the trial court erred in denying this motion since the statements were taken in violation of his Fourth and Fifth Amendment rights.

Defendant's first argument is based upon his allegation that the police invaded his home and arrested him without probable cause. Thus he argues that his statements should be suppressed because of his illegal detention. Two cases, *Brown v. Illinois,* (1975) 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416, and *Williams v. State,* (1976) 264 Ind. 664, 348 N.E.2d 623, are enlightening on this issue:

> "Those cases clearly hold that if probable cause for the initial detention is lacking, or if the initial detention is otherwise illegal, any confession obtained as a result thereof should be suppressed, unless the confession is a product of the individual's free will. In *Williams, supra,* we noted the factors established by *Brown v. Illinois, supra,* which are relevant in determining whether or not a confession is a product of a free will. These factors are: (1) whether the individual was informed of his rights as required by *Miranda v. Arizona,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and (4) 'particularly, the purpose and flagrancy of the official misconduct.' *Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416, 427.''

*Porter v. State,* (1979) 271 Ind. 180, 185, 391 N.E.2d 801, 807.

We find that the record does not support the defendant's argument, but instead shows that the police followed the law during the questioning of this defendant. The police did not violate the defendant's Fourth Amendment right against illegal searches and seizures when they arrived at his mobile home on November 24, 1980. They had certain evidence, related above, indicating the defendant was a suspect in the case. The police informed the defendant and his mother of this fact when they arrived at his home. They were invited into the trailer by the family. At that time, the police stated they were investigating the murder of Elizabeth Moore and wanted to question defendant Partlow about the crime. The defendant and his mother had a private conference before discussing anything with the police and then stated they would discuss the matter with the police. After the *Miranda* rights were read, both the defendant and his mother indicated they understood them and waived those rights. The police then questioned the defendant for about an hour. At the conclusion of the questioning, the police asked the defendant if he would go down to the town hall and make a statement. Both the defendant and his mother agreed to

this. The police subsequently arrested the defendant after they taped his statement.

Defendant's argument is based on the premise that since he was illegally "arrested", all evidence obtained thereafter, both his statements and physical evidence, were tainted by the illegality of the unlawful arrest. It is not pertinent in discussing this issue to determine at what point the defendant was placed under arrest. The entry into the home, the discussions with the defendant, and the taping of the statement were all done with the consent of the defendant and his mother. Thus, because the defendant was not illegally seized, there was no violation of his rights guaranteed under the Fourth Amendment and the evidence obtained through the questioning was properly admitted into evidence. *See Terry v. Ohio,* (1968) 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *Barber v. State,* (1981) Ind. App., 418 N.E.2d 563.

Failing to persuade this Court on his first argument, the defendant also claims that the trial court erred by admitting into evidence the statements given to the police because there was insufficient proof that the statements were given voluntarily, knowingly, and willingly.

"The question of the admissibility of a confession is controlled by determining from the totality of circumstances, whether or not it was made voluntarily. The circumstances to be considered include whether the confession was freely self-determined, the product of a rational intellect and free will, without compulsion or inducement, and whether the accused's will was overborne. *Murphy v. State,* (1977) 267 Ind. 184, 190, 369 N.E.2d 411, 415. We review the question on appeal as we do other sufficiency matters. We do not weigh the evidence, but rather determine whether there was substantial probative evidence to support the trial court's finding. *Works v. State,* (1977) 266 Ind. 250, 362 N.E.2d 144. We will not disturb a trial court's ruling on the admissibility of a confession when such ruling is based on substantial, though conflicting evidence. *Riggs v.*

*State,* (1976) 264 Ind. 263, 270, 342 N.E.2d 838, 843."

*Harrison v. State,* (1978) 269 Ind. 677, 682, 382 N.E.2d 920, 923–24, *cert. denied* 441 U.S. 912, 99 S.Ct. 2010, 60 L.Ed.2d 384; *see also Bryan v. State,* (1982) Ind., 438 N.E.2d 709. The State has the burden to prove, beyond a reasonable doubt, that the defendant voluntarily and intelligently waived his rights, and that the defendant's confession was given voluntarily. *Chandler v. State,* (1981) Ind., 419 N.E.2d 142; *Shepler v. State,* (1980) Ind., 412 N.E.2d 62.

Defendant and his mother were fully informed of the purpose of the officers' visit to the trailer and the defendant was informed of his constitutional rights at that time. Defendant and his mother consulted privately and then indicated they were willing to discuss the situation with the police. Both the defendant and his mother indicated they understood the constitutional rights, agreed to be questioned, and signed a waiver of rights form. Defendant Partlow was informed of his right to an attorney and his right to remain silent. We have held that a juvenile may waive his rights and have his statement used against him at a subsequent trial if he is: informed of the right to an attorney and the right to remain silent; given an opportunity to consult with his parents, guardian, or an attorney as to whether or not he wishes to waive those rights; and there are no elements of coercion, force, or inducement present. *Lewis v. State,* (1972) 259 Ind. 431, 439, 288 N.E.2d 138, 143; *see also Chandler, supra; Shepard v. State,* (1980) Ind., 404 N.E.2d 1.

At the police station, the defendant and his mother both agreed that he could talk to the police without his mother's presence and this was done. We have held that it is not necessary that a parent or guardian be present at every instance in which the juvenile voluntarily talks to the police. *Shepard, supra,* 404 N.E.2d at 5. In the taped interview, Officer Rhinebarger asked the defendant if he had been advised of his constitutional rights. The defendant stated that he had and also understood his rights.

However, the defendant now claims that the statement should have been suppressed because the constitutional rights were not reread to him before the statement was taken. There is some conflict in the record as to whether or not the full rights were formally given to the defendant again before the interrogation began. The defendant does state, however, that he was given his rights and he understood them. We have held that if at the commencement of custodial interrogation the suspect has been given an advisement and made a waiver in accordance with the guidelines in *Miranda,* that advisement "need not be repeated so long as the circumstances attending any interruption or adjournment of the process is such that the suspect has not been deprived of the opportunity to make an informed and intelligent assessment of his interests involved in the interrogation, including the right to cut off questioning. *Michigan v. Mosley,* [ (1975) 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313]." *Owens v. State,* (1982) Ind., 431 N.E.2d 108, 110. Defendant showed that he had a continuing understanding of his rights and was willingly and knowingly proceeding with the interrogation by the police. There is no merit to the defendant's claim that his statement was inadmissible on this ground. *Grey v. State,* (1980) Ind., 404 N.E.2d 1348; *Conrad v. State,* (1974) 262 Ind. 446, 317 N.E.2d 789.

While en route to the Hamilton County Jail from the town of Sheridan, the defendant made several voluntary statements to the police. As he passed his house, going out of town, he said, "People always said I'd get in trouble and I guess I've really done it now." He later made the statement: "How long do you think it will be before the people in Sheridan know I did it."

■ The State contends that it was not error to allow this testimony because these were volunteered statements. The record shows that the officers transporting the defendant to jail did not question him during the ride nor did they make statements to him to induce him to make these declarations. We held in *Johnson v. State,* (1978) 269 Ind. 370, 377, 380 N.E.2d 1236, 1240:

"The term 'interrogation' has been defined as a process of questioning by law enforcement officials which lends itself to obtaining incriminating statements. *Escobedo v. Illinois* (1964), 378 U.S. 478, 485, 84 S.Ct. 1758, 1762, 12 L.Ed.2d 977, 986. Not every statement uttered by a police officer which is punctuated with a question mark will necessarily constitute an interrogation. *See e.g. Bugg v. State,* [ (1978) 267 Ind. 614, 372 N.E.2d 1156]. Rather, it is necessary to view the statement in the context in which it was made. If, after having done so, it does not appear that the purpose of the remark was to obtain a confession from the accused, *Miranda* is not triggered and it is not necessary that the accused first be advised of his rights."

Defendant, of course, had been previously advised of his rights and it was not necessary to reiterate those rights if the police had interrogated him further. However, the record shows that these statements made by the defendant were not the result of any interrogation or conversation by the police, but were voluntary statements by the defendant while he was being transported to the jail. They were therefore admissible into evidence. *Staton v. State,* (1981) Ind., 428 N.E.2d 1203, 1209–10; *Smith v. State,* (1981) Ind., 419 N.E.2d 743, 747; *Johnson v. State, supra.*

■ Defendant further claims his constitutional rights were violated when the police asked him a question and he was forced to reveal that he had in his possession a surgical blade which he had taken from Riverview Hospital. Two police officers accompanied him to the hospital to have certain physical samples taken, i.e., blood samples, fingernail scrapings and hair samples. These samples were taken by hospital employees. When it was noticed that a surgical blade was missing, the police searched the defendant and found the blade in his pocket. The officers did not interrogate the defendant about any of the facts of the case but asked him what he was doing with the blade. The defendant replied that if he was to be found guilty of

killing Mrs. Moore, he did not intend to spend the rest of his life in prison. Under the circumstances, the police had a reasonable suspicion that the defendant had secreted the weapon on his person and it was proper for them to search him. Their suspicions were justly founded when the blade was, in fact, found in his possession. The police had a right and, in fact, a duty, to search the defendant to determine whether he had secretly obtained this instrument which he could then use to injure not only the police officers and guards, but which the defendant could use to injure himself. Their search, therefore, was proper. *Terry v. Ohio, supra; Zelmer v. State,* (1978) 177 Ind.App. 636, 380 N.E.2d 618; *Jenkins v. State,* (1977) 172 Ind.App. 544, 361 N.E.2d 164. Furthermore, the defendant's Fifth Amendment rights were not violated by the police asking him what he was doing with the instrument since it was certainly a pertinent question to be asked consistent with their search and the finding of the instrument in his pocket. *Smith, supra; Staton, supra.* We find no error on this issue.

### IV

Defendant next claims the trial court erred in refusing to sequester the jury and to grant individual examination of prospective jurors during *voir dire.* The record shows that the defendant never, in fact, moved to sequester the jury. Even though he used the word sequester in his motion, it is clear his motion was directed to the individual examination of prospective jurors and did not address itself to sequestration of the jury during trial. Sequestration of the jury is understood as a request by the defendant for the jury to be kept together during the trial and in a capital case such request places a mandatory duty upon the trial judge to grant the request. *Lowery v. State,* (1982) Ind., 434 N.E.2d 868. Here, of course, the defendant was not given the death penalty. He moved to have the jurors separated during their *voir dire* examination and the words used in the motion by the defendant to "sequester the jurors from the courtroom" during the examination of each individual prospective juror. That is

the motion made by the defendant, that was argued by the attorneys, and that the trial court eventually denied. Since the defendant did not move for sequestration of the jury during trial and never objected to its being permitted to separate after each day's proceedings, there is no question of error presented to us on this issue.

The only question remaining on this issue is whether the trial court committed error in denying the motion to have individual *voir dire* of the prospective jurors. It is well established that the trial court has broad discretionary powers in regulating the form and substance of the *voir dire* examination. *Hopkins v. State,* (1981) Ind., 429 N.E.2d 631. Defendant argues that since this was a death penalty case, the repeated references to circumstances concerning the death penalty from one prospective juror would prejudice the other jurors. We note that the defendant was not given the death penalty and therefore this issue has been resolved without prejudice to him and the issue is moot. *Norton v. State,* (1980) Ind., 408 N.E.2d 514. Furthermore, the defendant has not furnished us with a transcript of the *voir dire* proceedings nor pointed out in any way what transpired there that would occasion the prejudice he claims was apparent. Thus, there is no showing that the trial court abused its discretion in the denial of this motion and no showing that the defendant was in any way prejudiced by the trial court's ruling. *See Ward v. State,* (1982) Ind., 439 N.E.2d 156, 158 (Ind.R.App.P. 7.2(C) does not apply where record incomplete and the defendant cannot point to the error).

### V

On June 22, 1981, the defendant filed a motion with the trial court entitled "Motion to Dismiss Count III (Death Penalty)." Defendant argued that the death penalty was unconstitutional as applied to juveniles because it "shocks the general conscience of society", is "beyond what is necessary to achieve public intent concern-

ing juveniles", there is no "rehabilitative effect" and that it is unjust. On appeal, the defendant gives a different reason for his assertion that the death penalty is unconstitutional. He now claims it is unconstitutional because the prosecutor has unfettered discretion in charging the death penalty. Defendant's argument on appeal is not the same argument advanced before the trial court and therefore the issue has been waived and we will not consider it further. *Ballard v. State,* (1974) 262 Ind. 482, 498, 318 N.E.2d 798, 808. In addition, the defendant was not given the death penalty. This issue is moot as far as any prejudice is concerned. *See* Issue IV, *supra.*

### VI

Defendant claims the trial court erred in refusing to allow the defendant to show that other persons had committed the crime with which he was charged. Defendant indicated through an offer to prove that he wished to admit a statement by one Donald Hicks in which Hicks stated that he and Jerry Hunt committed the crime. However, the State showed there was testimony that Hicks subsequently recanted the statement and claimed he had made the statement only because his family had been threatened by a member of the defendant's family. Further, the results of a polygraph examination revealed that Hunt was not involved in the crime. This Court has previously held that it was proper to exclude from evidence, as hearsay, third party confessions and declarations against penal interest since such confessions are permeated with untrustworthiness. *Taggart v. State,* (1978) 269 Ind. 667, 382 N.E.2d 916; *Fortson v. State,* (1978) 269 Ind. 161, 379 N.E.2d 147.

Defendant further claims that the trial court erred in allowing the State to present evidence during an offer to prove of a polygraph examination of Jerry Hunt. It is true that absent a stipulation by both parties, the mention of a polygraph is error. *Kimmel v. State,* (1981) Ind., 418 N.E.2d 1152, *cert. denied,* (1981) 454 U.S. 932, 102 S.Ct. 430, 70 L.Ed.2d 239; *Pavone v. State,* (1980) Ind., 402 N.E.2d 976. However, reference to the polygraph was not made in the presence and hearing of the jury but was mentioned outside the presence of the jury to the trial court in arguing the reasons for refusing to admit the defendant's proffered evidence. Since the jury was the trier of fact and the polygraph examination concerned a third party who was not even called as a witness, the defendant has not shown that he was prejudiced in any manner by this reference.

Defendant's final claim of error in this issue concerns the trial court's decision to have the defendant put on State's Exhibit 15 and demonstrate wearing and zipping it. This exhibit was the blue sweater jacket or sweat shirt found with the victim's purse. At trial, the defendant objected, claiming there was no foundation associating him with the jacket. On appeal, the defendant argues that the trial court exceeded its discretion as the demonstration was done in an abusive manner and the defendant had not been associated with the jacket. There is no showing that the demonstration was done in an abusive manner. Furthermore, it is within the trial court's discretion to permit a physical demonstration such as this one and it does not amount to requiring the defendant to incriminate himself. *Bivins v. State,* (1982) Ind., 433 N.E.2d 387, 390.

In addition, there was evidence to associate the defendant with the jacket. David Carey, the defendant's uncle, testified that the exhibit was similar to the jacket he had loaned to the defendant the day before the murder. Defendant's brothers, Tony and Kerry, also testified that the jacket was similar to the one they had seen the defendant wearing on the night of the murder and was the one they found with the victim's purse while hunting on November 24, 1980. There were also hair samples found on the jacket that were of common origin with the defendant's hair. The trial court did not abuse its discretion in permitting the demonstration.

## VII

During the testimony of Dr. Warner, the pathologist, one of the jurors fainted. Dr. Warner attended to the juror and rendered some assistance. After the juror regained consciousness, the doctor's contact with her was to advise her to take a drink of water and lie down for a few minutes. He had no conversation with any of the jurors concerning the case. Defendant moved for a mistrial since the doctor had placed himself in an influential relationship with the juror. The trial court found that the incident did not create any prejudice to the defendant and denied the motion. The decision to grant or deny a mistrial is a matter committed to the trial court's discretion and it is reviewable solely on the issue of abuse of discretion. *Smith v. State,* (1982) Ind., 432 N.E.2d 1363. There is no showing here that the trial court abused its discretion.

## VIII

Defendant claims that the trial court erred in denying his motion for judgment on the evidence at the close of the State's case-in-chief and also at the close of all the evidence. Since the defendant presented evidence following the State's closing, he has waived any error on his first motion. *Scott v. State,* (1982) Ind., 434 N.E.2d 86; *Simpson v. State,* (1978) 269 Ind. 495, 381 N.E.2d 1229.

It is well settled in considering the sufficiency of the evidence that we will neither reweigh the evidence nor judge the credibility of witnesses. We look only to that evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the judgment will not be overturned. *Duffy v. State,* (1981) Ind., 415 N.E.2d 715. Furthermore, this Court does not have to find that circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence but only that an inference may reasonably be drawn therefrom which supports the finding of the jury. *Gilmore v. State,* (1981) Ind., 415 N.E.2d 70.

The evidence, some of which we already have recounted throughout this opinion, shows that there were facts presented to the jury from which it could reasonably find or infer that the defendant did, in fact, commit the crimes of murder and robbery. The evidence revealed that Elizabeth Moore lived in the town of Sheridan, Indiana, and had last been seen alive on Friday evening, November 20, 1980, at about 10:00 p.m., when some friends gave a party for her at her home. Her body was discovered the following morning, Saturday, November 21, 1980. A pencil had been jabbed in her throat and her throat had been cut by a sharp weapon. There was also evidence of strangulation and of other blows to her body as well as some bruising around the vaginal area.

The police requested the assistance of a local civic group in searching for evidence related to the crime. This group later discovered the victim's billfold on top of the Sheridan High School on November 23, 1980.

The following day, Tony and Kerry Partlow, brothers of the defendant found a purse covered by a blue sweater jacket. The police were notified of the discovery and both Tony and Kerry informed the police that the sweater appeared to be one they had seen the defendant wearing on Friday night. The blue sweater jacket worn by the defendant on Friday night had been loaned to him by his uncle on the previous day. Tony and Kerry also informed the police that they noticed Darrin had an unusual amount of money on Saturday morning and they were further concerned that Darrin was capable of committing the murder of Elizabeth Moore. There was also evidence that Darrin Partlow had gone to the school and attempted to gain entrance to a dance being held there Friday night but was refused because he did not have the admission fee of two dollars. He appeared there later, at about 10:30, and gave two dollars for his admission into the dance. The dollar bills were old and crum-

pled. Elizabeth Moore was known to have money lying about her house in various places.

The brothers informed the police that their mother worked and would not be home until after 4:00 p.m. The police went to the home of the defendant and his mother at about 5:00 p.m. that day. They advised the defendant and his mother that they were investigating the murder of Elizabeth Moore. As related above, the police read the defendant's constitutional rights to him, eventually took a statement from the defendant, and then placed him under arrest.

Following the questioning, the defendant was being transported to the Hamilton County Jail by the police when he made several incriminating statements. These statements were made voluntarily and were not induced by interrogation by the police. A court order was subsequently obtained and the defendant was taken to the Riverview Hospital in Noblesville, Indiana, to have various physical samples taken from him. Laboratory tests showed that a sample of the defendant's hair was of a common origin with the hair found on the sweater jacket recovered with the victim's purse. Blood tests also showed that clothing the defendant was wearing on the night of the murder showed the presence of blood stains which were determined to be type O blood. The victim's blood was type O and the defendant's blood is type A.

We find the above evidence to be sufficient to convict the defendant of the crimes of murder and robbery.

## IX

■ Defendant next claims the trial court erred in giving State's tendered instructions I and II. State's tendered instruction No. 1 was on the subject of circumstantial evidence. We found this identical instruction to be a correct statement of the law and properly given by the trial court in *Norton v. State,* (1980) Ind., 408 N.E.2d 514 at 532. We make the same finding here. State's tendered Instruction No. II was as follows:

2.003. PROOF OF ALL MATERIAL ALLEGATIONS.

The Court further instructs you that while it is the law that every person charged with the commission of a crime is presumed to be innocent until his guilt is established beyond a reasonable doubt, yet if the evidence is so strong and conclusive as to overcome the presumption of innocence you should convict. While it is necessary that every essential element of the crime charged in the affidavit in this case should be proven by evidence beyond a reasonable doubt, it is not necessary that each incidental or subsidiary fact should be proven beyond a reasonable doubt. Evidence should not be considered in fragmentary parts or as if each face or circumstance stood apart from the others, but the entire evidence should be considered and the weight of evidence should be determined from the whole body thereof.

Record at 684.

This identical instruction was approved by the Court of Appeals in *Hartwell v. State,* (1974) 162 Ind.App. 366, 321 N.E.2d 222. Defendant's claim seems to be that the instruction is prejudicially repetitious. The only part of the instruction that seems to be repetitious is that it does state that the defendant is presumed innocent and can be convicted only upon proof of guilt beyond a reasonable doubt. This same statement appears in other instructions. Since this was in favor of the defendant it is difficult to see how he could have been prejudiced by having this well established rule repeated to the jury. The instruction was properly given to the jury.

## X

■ Defendant claims that the trial court erred in refusing his tendered instruction I and in modifying his tendered instruction III. Defendant's tendered instruction No. I stated the presumption of innocence of the accused and also stated that this presumption remained with the accused throughout the trial. It further stated that the jury was to reconcile the

evidence with the presumption of innocence if it could. All of these elements were covered by other instructions and there is therefore no error in the trial court's denying the giving of this one. *Richey v. State,* (1981) Ind., 426 N.E.2d 389, 395. Defendant's tendered instruction No. III instructed the jury that circumstantial evidence must exclude every reasonable hypothesis of innocence in order to permit conviction. The trial court gave paragraphs 1 and 3 of the instruction but struck paragraph 2. As the State pointed out, the second paragraph is little more than a reiteration of the first paragraph and was nothing·more than repetition. The substance of paragraph 2 was covered in paragraphs 1 and 3 and the trial court accordingly did not abuse its discretion in modifying it.

### XI

Finally, the defendant claims that the trial court erred in refusing to let him to bail pending trial. There is no merit to this contention. First, the issue is now moot since the defendant has been convicted and sentenced. *See Alleyn v. State,* (1981) Ind., 427 N.E.2d 1095. Second, murder is not a bailable offense. Ind. Const. Art. 1, § 17. This Court held in *Caudill v. State,* (1974) 262 Ind. 40, 311 N.E.2d 429, that the presumption is against the right to be admitted to bail on a murder case and the burden is on the defendant to show that the proof is not evident or the presumption of guilt strong. *Bozovichar v. State,* (1952) 230 Ind. 358, 103 N.E.2d 680. Here the trial court did review all of the evidence contemplated in the case and made the determination in denying bail that proof was evident and presumption of guilt was strong. In view of the evidence presented to the trial court we do not find that it abused its discretion in making that determination.

The trial court is in all things affirmed.

GIVAN, C.J., and HUNTER, J., concur.

DeBRULER, J., concurs in result with separate opinion in which PRENTICE, J., concurs.

DeBRULER, Justice, concurring in result.

The interpretation given the juvenile statutes in the first part of the majority opinion is strained and at odds with the simple straight-forward language involved. Indiana Code § 31–6–4–13 provides in section (d) and (e) as follows:

"(d) The court shall next determine whether the prosecutor intends to seek a waiver of jurisdiction under IC 31–6–2–4. If waiver is sought, the court may not accept an admission or denial of the allegations from the child under subsection (i) and shall schedule a waiver hearing and advise the child according to subsection (e).

(e) The juvenile court shall inform the child and his parent, guardian, or custodian, if that person is present, of:

(1) The nature of the allegations against the child;

(2) The child's right to:

(A) Be represented by counsel;

(B) Have a speedy trial;

(C) Confront witnesses against him;

(D) Cross-examine witnesses against him;

(E) Obtain witnesses or tangible evidence by compulsory process;

(F) Introduce evidence on his own behalf;

(G) Refrain from testifying against himself; and

(H) Have the state prove that he committed the delinquent act charged beyond a reasonable doubt;

(3) The possibility of waiver to a court having criminal jurisdiction; and

(4) The dispositional alternatives available to the juvenile court if the child is adjudicated a delinquent child."

Once the question of counsel is determined and the State is seeking a waiver of juvenile jurisdiction, the Court then is required to "schedule a waiver hearing and advise the child according to subsection (e)." These provisions unquestionably contemplate the situation where the State has filed a delinquency petition and moved for waiv-

er of juvenile jurisdiction. I interpret these provisions to grant the statutory right to the child and parents to be informed by the court itself of the allegations against the child and the trial rights available in the forth coming hearing, whether that future hearing is one on waiver or delinquency, and without regard to whether the juvenile will be called upon to admit or deny the allegations of the petition, and without regard to whether counsel was previously obtained or appointed. The initial hearing should be conducted in my view, where the alleged delinquent is on the waiver track, because the statute requires it. What should be done by an appellate court when confronted with a record which shows that an initial hearing was not held before the waiver hearing commenced is another matter.

In this area, it is axiomatic that it is only juvenile jurisdiction properly acquired that can be waived. *Summers v. State,* (1967) 248 Ind. 551, 230 N.E.2d 320. Appellant contends that the failure of the juvenile court to conduct an initial hearing as required by § 31–6–4–13 prevented it from acquiring jurisdiction, and that therefore the waiver of jurisdiction itself was void. The basic premise is not true. The final steps in the acquisition of jurisdiction are the decision of the court to take jurisdiction, and the filing of a formal petition of delinquency. *Mallard v. State,* (1979) 180 Ind.App. 692, 390 N.E.2d 218. The initial hearing is required to be held upon each such petition, and it is therefore evident that jurisdiction is acquired prior to the hearing.

PRENTICE, J., concurs.