89 F.3d 838
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Robert L. OWENS, Petitioner-Appellant,
v.
Craig HANKS, Superintendent, Respondent-Appellee.
 No. 96-1124.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 25, 1996.*
Decided June 25, 1996.
 
 Before CUMMINGS, PELL and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 Robert L. Owens filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. In his petition, Owens contended that he was denied (1) a fair and impartial jury, (2) a fair trial because of prosecutorial misconduct, and (3) his right to effective assistance of counsel at trial. The district court rejected Owens' contentions on the merits, and Owens appeals.
 
 
 2
 Owens is currently an inmate at the Wabash Valley Correctional Center in Carlisle, Indiana. Owens, who is African-American, was convicted of the murder of Harold Rice, a white laundry superintendent at the Indiana State Prison in Michigan City, Indiana. Rice was bludgeoned to death in the prison laundry building on the morning of December 29, 1976. At that time, Owens was an inmate at the Indiana State Prison.
 
 Impartiality of the Jury
 
 3
 Owens first claims that he was denied the right to a fair and impartial jury because several of the jurors expressed, either at the voir dire or at a subsequent post-conviction hearing, biases against blacks and/or homosexuals. (There was testimony at trial that Owens was engaged in a homosexual relationship with another inmate, Valgene Royal). Juror Susan Brash stated during voir dire that she would unwittingly be influenced by a witness' homosexuality because she believes it is morally wrong. Lois Henry, who also served on Owens' jury, stated at Owens' post-conviction hearing that she believes blacks are more likely to commit crimes than whites, and that this is due to a lack of opportunities. She also stated that she believes blacks are less educated than whites. With regard to homosexuality, Henry stated that she doesn't approve of it and would be less likely to believe a homosexual. Glen Eldridge, another former juror, stated at the post-conviction hearing that he felt uneasy around blacks and would tend to promote a white over an equally qualified black. Finally, Brash indicated during voir dire that a relative had been the victim of a beating and that her husband was an Indiana State Trooper who had been called in to the Indiana State Prison during a riot.
 
 
 4
 Due process requires that every criminally accused be afforded a fair hearing. Irvin v. Dowd, 366 U.S. 717, 722 (1961). When the trier of fact is a jury, due process requires that the jurors be impartial. Id. Although Owens' attorney did not challenge for cause Brash, Henry, or Eldridge, the state does not argue that Owens has procedurally defaulted on this issue. Rather, the state addresses the merits of Owens' argument and contends that when the jurors' comments are viewed in their entirety, it is clear that they could put aside their biases and render an impartial verdict. (Appellee Br. 9).
 
 
 5
 Because Owens failed to challenge Brash, Henry, or Eldridge, the district court did not make any explicit ruling that these individuals could serve impartially; however, the court made an implicit finding to that effect when it impaneled them as jurors. See, e.g., Kirk v. Raymark Indus., Inc., 61 F.3d 147, 155 (3d Cir.1995) (discussing United States v. Polan, 970 F.2d 1280, 1284 (3d Cir.1992), cert. denied, 507 U.S. 953 (1993)), cert. denied, 116 S.Ct. 1015 (1996). This implicit factual determination is entitled, on habeas review, to a presumption of correctness under 28 U.S.C. § 2254(d) if it is fairly supported by the record. Hunley v. Godinez, 975 F.2d 316, 318 (7th Cir.1992) (per curiam).
 
 
 6
 Our review of the record leads us to conclude that those jurors who expressed biases could set them aside and render a fair verdict. First, with regard to race, all jurors denied during voir dire that they would allow race to play a role in their decision if selected. Furthermore, Henry stated at the post-conviction hearing that she would not try to cheat someone just because that person was black. Likewise, Eldridge testified that he would treat a black man fairly in a business transaction. Both Henry and Eldridge stated they would not mind if a black family moved into their neighborhood.
 
 
 7
 Second, with regard to homosexuality, it is true that both Brash and Henry indicated that they would be less likely to believe a homosexual. However, as the Indiana Court of Appeals noted, testimony was elicited at trial that witnesses for both the prosecution and the defense engaged in homosexual relationships, and thus any alleged prejudice on the part of the jurors regarding homosexuality affected both parties. See R.Doc. 13, Exh 2. The state advanced this same argument in this appeal in its response brief, but Owens failed to file a reply brief. Because Owens has failed to address this argument, he has waived his claim based on the jurors' alleged bias against homosexuals. See United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir.1991).
 
 
 8
 Finally, as for juror Brash, whose husband worked at the Indiana State Prison during a riot and whose relative suffered a severe beating, the full extent of Owens' argument on these matters is: "[Brash's] relation to a crime victim and to a state policeman implies bias and prejudice." (Br. 10). This assertion ignores Brash's statements that she would put aside these matters and make her decision based on the evidence. Accordingly, Owens has waived his claim of error on this point. Id.
 
 Prosecutorial Misconduct
 
 9
 Owens argues that he was denied a fair trial because of prosecutorial misconduct. He recites a litany of alleged abuses committed by the prosecuting attorney at various points during the five-day trial. The district court stated in its decision that the state had failed to argue procedural default. The court thus addressed each alleged impropriety and concluded that none of them justified granting habeas relief, either because the questions or comments were proper, the issue was not adequately developed, or the evidence of Owens' guilt was so overwhelming that any harm was insubstantial.
 
 
 10
 Owens raises the same claims of prosecutorial misconduct on appeal. The state argues first that, contrary to the district court's assertion, it did argue that Owens had procedurally defaulted on his claim of prosecutorial misconduct. The state then notes that Owens failed to raise the issue of prosecutorial misconduct in his direct appeal. See Owens v. State, 431 N.E.2d 108 (Ind.1982) (discussing admissibility of Owens' inculpatory statement and photographs of the corpse). Because Owens has procedurally defaulted on his claim of prosecutorial misconduct, and has made no attempt to demonstrate cause and prejudice, we agree with the state that review of this claim is foreclosed. Jones v. Washington, 15 F.3d 671, 675 (7th Cir.), cert. denied, 114 S.Ct. 2753 (1994). In any case, we have reviewed the entire trial transcript and have considered each of the allegedly improper comments or questions. We agree with the district court that most of the comments or questions were not improper, and those that were questionable did not deprive Owens of a fundamentally fair trial. See Darden v. Wainwright, 477 U.S. 168, 181 (1986).
 
 Ineffective Assistance of Counsel
 
 11
 Owens claims he was denied his Sixth Amendment right to effective assistance of counsel. To establish ineffective assistance of counsel, Owens must show both that his attorney rendered deficient performance and also that he was prejudiced by his attorney's performance. Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). If it is plain that the alleged deficiencies in counsel's performance did not prejudice the defendant, we need not examine whether counsel's performance was in fact deficient. Strickland v. Washington, 466 U.S. 668, 697 (1984). To establish prejudice, a defendant must show that his attorney's errors rendered the proceedings fundamentally unfair or unreliable. Lockhart, 506 U.S. at 366.
 
 
 12
 Owens claims that his attorney, Richard Schaumann, erred in numerous ways. First, he complains that Schaumann erred by failing to move to quash the amended information. Owens had initially been tried on one count of first degree murder. That trial resulted in a hung jury. The state then amended the information, adding one count of felony-murder and one count of infliction of injury during a robbery. Schaumann then took over the defense from Owens' first attorney, Thomas McKenna, but did not move to quash the information even though the amendment violated Indiana law. We conclude that the failure to challenge the amended information did not render the proceedings fundamentally unfair because, though Owens was convicted of all three counts, he was sentenced to one term of life imprisonment, which was the mandatory penalty for first degree murder under Indiana law. See Ind.Code 35-13-4-1(a). Thus Owens suffered no additional punishment from the two counts wrongly added to the information.
 
 
 13
 Owens also argues that Schaumann erred by failing to conduct effective voir dire and by failing to challenge biased jurors. However, as we explained earlier in this order, we believe that the jurors who initially expressed biases could put those biases aside and render an impartial verdict. Therefore Owens has failed to demonstrate that his trial was rendered fundamentally unfair on this basis.
 
 
 14
 Next, Owens contends that Schaumann erred by failing to object to various allegedly inflammatory racial remarks made by the prosecution. Specifically, Owens maintains that Schaumann should have objected when the prosecutor (1) stated in his closing argument that the sound of Rice's skull cracking "kind of reminds you of being in a jungle," (2) stated that Owens took Rice's ring back to his cell because he "had to keep a scalp for his tee-pee," and (3) questioned defense witness William Smith about "black brotherhood." However, as noted previously in this order, in the context of the entire five-day trial, none of these allegedly improper statements or questions, either individually or taken together, rendered the trial fundamentally unfair.
 
 
 15
 Owens also contends that because at least one of the jurors expressed a bias against homosexuals during voir dire, Schaumann erred by opening the door to questions about Owens' sexual orientation. In addition, he argues that Owens was unprepared for trial because he was unaware of references in McKenna's files to Owens' homosexual orientation. However, Owens cannot show prejudice as a result of these alleged errors. During closing argument, Schaumann cast doubt on the testimony of the witness, Firman Cordell, who identified Owens as a homosexual. Schaumann pointed out that it was impossible for Cordell to have seen Owens with prisoner Valgene Royal in the summer of 1976, as Cordell had testified, because Owens was in lock-up (and hence separated from the main body of prisoners) at that time. Trial Tr. 861-62. Moreover, as noted above, the evidence adduced at trial showed that witnesses for both the defense and the prosecution engaged in homosexual relationships. Thus to the extent any jurors discounted testimony because of a witness' homosexuality, both parties were affected. Hence Owens has not shown that any errors by Schaumann in connection with this issue rendered his trial fundamentally unfair.
 
 
 16
 Owens claims that Schaumann should have objected to the prosecutor's use of certain prior convictions to impeach several of the defense witnesses. Owens claims that each of these witnesses had been convicted of multiple counts of murder involving a single victim, and that the prosecutor's questions left the jurors with the impression that there were multiple victims. In our view, in most cases a witness's credibility is not significantly improved if the jury believes that the witness is a murderer rather than a double murderer. Owens has failed to explain why this case would be any different. Accordingly, Owens has not demonstrated that he suffered any prejudice from the possible confusion in the minds of the jurors concerning whether his witnesses killed one or two people.
 
 
 17
 Owens contends that his attorney erred by failing to object to the prosecutor's mischaracterization of the time of the murder. During closing argument, the prosecutor stated that the murder occurred between 6:00 a.m. and 7:00 a.m., when the testimony indicated that it occurred between 7:00 a.m. and 8:00 a.m. However, given (1) the abundance of testimony that the murder occurred between 7 and 8:00 a.m., (2) Mrs. Rice's testimony that her husband left home at 6:55 a.m. as usual, and (3) Schaumann's reiteration of the correct time of death during his closing argument, the prosecutor's one erroneous reference to the time of the murder surely did not confuse the jury nor render Owens' trial fundamentally unfair.
 
 
 18
 Finally, Owens asserts that Schaumann erred by failing to argue on appeal that he was denied a fair trial due to a biased jury and prosecutorial misconduct. Owens gives this issue cursory treatment, merely stating that had either of these issues been raised on appeal, "there is more than a reasonable probability that [his] conviction would have been reversed on appeal." (Br. 42). Owens has forfeited this issue by failing to offer anything more than a conclusory assertion in support of his position. See Gagan v. American Cablevision, Inc., 77 F.3d 951, 965 (7th Cir.1996); Fed.R.App.P. 28(a)(6).
 
 
 19
 Because Owens cannot show that any of the alleged deficiencies in Schaumann's performance rendered his trial fundamentally unfair, he has failed to establish that Schaumann's performance was constitutionally ineffective. Lockhart, 506 U.S. at 369.
 
 AFFIRMED.[1]
 
 
 *
 After an examination of the briefs and the record, the court the court has concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 On April 24, 1996, while this case was pending on appeal, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214. Title I of this Act significantly curtails the scope of collateral review of convictions and sentences. We need not decide to what extent the amendments in the Act apply to petitions pending when the Act was signed into law, or what effect those amendments have if they apply, because, even under the more expansive scope of review permitted prior to the Act, Owens is not entitled to relief