RICHARD EMERSON LANE *v.* STATE OF INDIANA.

[No. 675S146. Filed July 12, 1977. Rehearing denied August 31, 1977.]

*Jack Rogers*, of Franklin, *Frank E. Spencer*, of Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General, *Charles M. Russell*, Deputy Attorney General, for appellee.

HUNTER, J.—Richard Emerson Lane, the defendant, was charged with first degree murder and first degree murder in the commission of a robbery. After a trial by jury, he was convicted on both counts and was ultimately sentenced to life

imprisonment on one count. The defendant filed a motion to correct errors and appeals to this Court, raising the following issues :

1.) Whether the defendant's statement was obtained after advisement of and a valid waiver of his constitutional rights; and

2.) Whether the testimony of the defendant's girlfriend should have been excluded as a confidential communication.

## I.

A pre-trial motion sought the suppression of a statement made by the defendant and a rifle recovered through his aid. Evidence was submitted in a pre-trial hearing and the motion was denied. When the statement and the rifle were offered into evidence, the defendant objected. The objections were overruled and the evidence was admitted. The defendant contends that the statement should have been excluded from his trial on the grounds that it was given without an adequate advisement of his constitutional rights and without a valid waiver of his right to remain silent.

In *Miranda* v. *Arizona*, (1966) 384 U.S. 436, guidelines were established to protect an individual's constitutional privilege against compulsory self-incrimination. A statement made by an accused during custodial interrogation is not admissible over his objection, unless law enforcement officers give adequate and specified warnings to the accused before questioning, and the accused waives those rights. *Michigan* v. *Mosley*, (1975) 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313. In order for an accused to effectively waive his privilege of silence and his right to an attorney, the waiver must be made voluntarily, knowingly, and intelligently. *Brown* v. *State*, (1971) 256 Ind. 558, 270 N.E.2d 751. Volunteered statements fall completely outside the scope of Miranda; the safeguards erected by that holding are directed at protecting the accused from abuses of interrogation.

"There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime. . . ."

*Miranda, supra,* 384 U.S. at 478, 16 L.Ed.2d at 726. Volunteered statements are unaffected by Miranda because there can be no presumption of compulsion where there is no interrogation. An accused has a right to speak equal to his privilege of silence.

A corollary of an accused's right to remain silent is his right to cut off questioning.

"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point, he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise."

*Miranda, supra,* 384 U.S. at 473, 16 L.Ed.2d at 694, 86 S.Ct. 1602. The admissibility of statements made by an accused after he has exercised his right to remain silent depends on whether his right to cut off questioning has been scrupulously honored. *Michigan* v. *Mosely,* (1975) 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313; *Mims* v. *State,* (1970) 255 Ind. 37, 262 N.E.2d 638.

The trial court heard evidence on the defendant's motion to suppress in a pre-trial hearing. Much of this evidence was conflicting. This Court may not re-weigh the evidence and disturb a trial court's finding based upon conflicting evidence. *French* v. *State,* (1977) 266 Ind. 276, 362 N.E.2d 834. Substantial evidence in the record supports the following. Lane voluntarily gave himself up when he learned that a warrant had been issued for his arrest. He was orally advised of his rights at least twice and was asked to read the waiver of rights form for himself. He appeared to read the form, stated that he understood his rights, and signed the form which was witnessed by two officers. He

stated that he did not desire an attorney and that he did not wish to make a statement at that time. It also seems that upon inquiry, the defendant stated that he did not wish to speak to a Lt. Allen at that time, but also that the incident was bothering him. The investigating detective assigned to the case, Lt. Allen, was contacted and advised that Lane had given himself up. He was told that Lane had been advised of his constitutional rights and that he did not wish to make a statement at that time. Lt. Allen came to the jail, identified himself to Lane, and read the arrest warrant to him. When asked if he wanted an attorney, Lane replied that he did not. Allen then asked if Lane wanted to make a statement, and Lane replied, "Yes, I want to tell you all about it." The defendant then gave an oral statement which was reduced to writing by Lt. Allen and signed by the defendant. Lane then directed Lt. Allen to the location of the murder weapon. Much evidence was also adduced to establish that the defendant was of low average intelligence with poor reading comprehension.

This evidence adequately supports the trial court's determination that the safeguards protecting the defendant's privilege of silence were not transgressed. The defendant's rights were orally spelled out with clarity, and the defendant acknowledged that he understood those rights. This is unlike the situation in *Dickerson* v. *State*, (1972) 257 Ind. 562, 276 N.E.2d 845, where the accused was merely presented with a form and told to read and sign it if he understood. Any lack of reading ability on the part of the defendant was compensated for by the oral advisement. Although a signed waiver of rights form is not conclusive of the defendant's waiver of his rights, Lane did not refuse to sign a waiver such as did the accused in *Brown* v. *State, supra*. In fact, Lane specifically stated that he did not want an attorney and a valid waiver of his right to remain silent may be inferred where, after an adequate advisement and signed waiver, the defendant volunteered a confession upon the slightest prompting by Lt. Allen.

"An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver."

*Miranda, supra,* 384 U.S. at 475, 16 L.Ed.2d at 724. Although Lane at one point stated he did not wish to make a statement at that time, this was not such an assertion of his right to remain silent as would prohibit police officers from later asking if he wished to make a statement. Even after an unequivocal assertion by an accused of his right of silence there is not a per se proscription of further interrogation. *Michigan v. Mosely, supra.* The officers did not hold Lane incommunicado for an extended period of time, extracting a confession only after prolonged interrogation. In fact, it seems that no interrogation occurred at all. The officers merely asked, on two separate occasions, if the defendant wished to make a statement. The record supports the trial court's conclusion that the defendant's right to remain silent was scrupulously honored and that he made his confession after a valid waiver of that right.

## II.

The motion to suppress made by the defendant also sought to exclude the testimony of Lane's girlfriend, Faye. Evidence was heard in the same pre-trial hearing and the motion was denied. Lane contends that the testimony of Faye should have been excluded as a confidential communication. The evidence established that Lane and Faye had an ongoing relationship for six years. They had two children as a result of this relationship and considered themselves man and wife, although there was no formal marriage. Faye testified that there was an expectation of confidence as to conversations between herself and Lane.

Our statute refers to husbands and wives as incompetent witnesses, as to communications made to each other. Ind. Code § 34-1-14-5 (Burns 1973). This has been interpreted by case law as being restricted to confidential communications and information gained by reason of the

marital relationship. *Shepherd* v. *State,* (1971) 257 Ind. 229, 277 N.E.2d 165. The privilege is accorded only to those who maintain the legal relationship of man and wife. Our state does not recognize common law marriage. Ind. Code § 31-1-6-1 (Burns 1973).

> "[T]he lofty object of protecting from invasion the sanctity of marital peace is deemed to extend only to those who legally *are* husband and wife, whatever their honest and innocent belief may have been as to the validity of their relation."

8 Wigmore on Evidence § 2230 (NcNaughton rev. 1961). We refuse to extend this privilege to those not legally husband and wife.

For all the foregoing reasons, we find no trial error and the judgment should be affirmed.

Judgment affirmed.

Givan, C.J., DeBruler, Prentice and Pivarnik, JJ., concur.

NOTE.—Reported at 364 N.E.2d 756.