Kirk M. VASSEUR, Appellant,

v.

STATE of Indiana, Appellee.

No. 1280S465.

Supreme Court of Indiana.

Feb. 11, 1982.

Dennis Brinkmeyer, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Frederick N. Kopec, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is an appeal from a conviction for murder, Ind.Code § 35–42–1–1. The appellant, Kirk Vasseur, was convicted after a trial by jury and sentenced by the court to forty years' imprisonment.

Three issues are raised on appeal:

(1) Whether certain photographs were improperly admitted into evidence.

(2) Whether the evidence was sufficient to support the verdict of murder.

(3) Whether the court erred in giving certain instructions to the jury.

I.

The defense objected to the admission of exhibits thirty-five through thirty-nine which are described in appellant's brief as photographs of the motel suite which the appellant unlawfully entered on the evening he killed the man who was registered in the suite. They are described as showing, among other things, a close-up view of a hand-rolled cigarette and views of the rooms in disarray.

On appeal the appellant asserts that this evidence was inadmissible because it was evidence of unrelated crimes of theft and possession of a controlled substance, having no probative value on the murder charge, whose only purpose could be to inflame the passions of the jurors and to portray the defendant as a criminal bent upon mischief in order to bolster the case against him for murder.

Going to the merits, the State contends that the photographs were admissible as part of the res gestae of the offense.

 It was not error to admit the photographs. Photographic evidence need only be relevant and accurate to be admissible. *Gee v. State,* (1979) Ind., 389 N.E.2d 303; *Inman v. State,* (1978) Ind., 383 N.E.2d 820. Relevance is determined by an inquiry as to whether a witness would be permitted to describe verbally the subject of the photographs. *Propes v. State,* (1978) 269 Ind. 626, 382 N.E.2d 910. Photographs of places connected with crimes are admissible where relevant. In *Rogers v. State,* (1979) Ind., 383 N.E.2d 1035, we held that the trial court did not err in admitting photographs of porch and steps of the deceased's residence, where witnesses testified regarding objects and scenes as depicted in photographs. Here, witnesses testified that they came upon the appellant in the victim's ransacked motel suite. This testimony described the beginning of the chain of events that led to the shooting and killing of the victim. This was a proper subject for testimony and therefore could be evidenced by photographs. These challenged exhibits showed the area of the motel where these events occurred and were relevant.

## II.

The appellant contends that the evidence elicited at trial is not sufficient to support a verdict of murder. He urges the claim that certain evidence revealed circumstances demonstrating "provocation ... to incite sudden heat which would reduce the crime to manslaughter." This evidence was appellant's own testimony, which he claims was corroborated by State's witnesses, that

he was in the motel suite illegally simply to have sexual relations with a drinking companion, and that he stayed in the rooms after the young woman and another man left. He was surprised by the entry of the couple registered in the rooms, and fled, returning only to claim his clothing. At that point, the decedent tried to detain him while the police were called, he testified, and he fled again, fearing the police. While being pursued by the decedent, the appellant testified, he fired two shots at the floor in front of the decedent but the pursuit continued and he then turned and fired, accidentally striking the decedent. This "evidence regarding provocation and/or sudden heat rebuts the substantial proof required to support a murder conviction", appellant contends. He asserts that "the totality of the circumstances was sufficient to provoke both fear and anger in ... [his] mind so as to create sudden heat, thus mitigating the offense to manslaughter", and refuting "the presumption of an intentional killing." His theory is that "a quickly engendered fear of the decedent created a sudden fear" which reduces the offense to manslaughter.

In *Palmer v. State,* (1981) Ind., 425 N.E.2d 640, an appeal from a conviction for murder, we considered the proper manner of dealing with evidence of sudden heat in the course of considering the sufficiency of evidence. We concluded as follows:

"Appellant argues that the State failed to prove the absence of sudden heat and therefore failed to meet its burden of proving beyond a reasonable doubt each element of the crime charged.

Sudden heat is not an element of voluntary manslaughter, but rather a mitigating factor in conduct that would otherwise be murder. *Russell v. State,* (1981) Ind., 419 N.E.2d 973; *Anthony v. State,* (1980) Ind., 409 N.E.2d 632. The elements of murder and voluntary manslaughter are identical: knowing and intentional killing of another human being. There is no implied element of the absence of sudden heat in the crime of murder.

The voluntary manslaughter statute creates an affirmative defense of sudden heat akin to self-defense. The latter is, if successful, a complete defense while the defense of sudden heat is only a partial defense because it reduces the seriousness of the crime from the murder felony to a class B felony. It is akin to self-defense in that its introduction into the case (either through the State's own evidence or through the defendant's evidence or both) places a burden upon the State to negate the defense beyond a reasonable doubt and calls for an instruction on the lesser included offense of voluntary manslaughter.

When the State has the burden to prove beyond a reasonable doubt the absence of the elements of self-defense, we have said that this burden can be met not only by rebuttal evidence when the defendant has presented evidence of the defense, but also by affirmatively showing within its case-in-chief that the defendant was not acting in self-defense. *Harris v. State*, (1978) 269 Ind. 672, 382 N.E.2d 913.

Similarly, when the State has the burden of negating beyond a reasonable doubt the existence of sudden heat, it may do so by rebuttal of the defendant's evidence, if any, or by affirmatively showing within its case-in-chief that the defendant was not acting in sudden heat when the knowing and intentional killing took place." 425 N.E.2d at 644.

The record reveals the following evidence. When the defendant learned that the police had been called, he became nervous and tried to leave the motel, but the victim barred his way. The defendant attempted to strike the victim but missed, and then kicked the victim in the groin. He then drew a gun, threatened the victim, and fired several shots at the floor around the victim's feet. The chase began, and as the two men emerged from the motel, the appellant turned and fired twice hitting the victim in the chest. One bullet pierced the victim's heart and was the cause of death. The victim was not armed. The appellant admitted that he deliberately shot the victim.

█ There was sufficient evidence to support each element of murder. Intent to kill can be inferred from the intentional use of a deadly weapon in a manner reasonably calculated to produce death or great bodily harm so that a purpose to kill may be inferred from the act of killing. "So long as the offender is capable of conceiving a design, he will be presumed, in absence of contrary proof, to have intended natural consequences of his own acts." *Cowans v. State*, (1980) Ind., 412 N.E.2d 54; *Greider v. State*, (1979) Ind., 385 N.E.2d 424.

█ There was also sufficient evidence for the jury to conclude that the conduct of the victim toward appellant was insufficient to provoke a sudden heat of the mind. The victim was not armed, but appellant was. As between the two, appellant had the upper hand; there was no reason for appellant to fear injury at the hands of the victim, so long as he simply remained in place. There was likewise no reason for appellant to fear injury at the hands of the police.

### III.

The defense objected to three instructions.

█ (a) State's Instruction No. 4:

"The law does not recognize the use of words alone as sufficient provocation to reduce an offense from murder to manslaughter, the other essential elements of the crime of murder being present.

Before provocation would be sufficient, the person killed must be doing some act which at the time is of such a character that so inflames the mind and excites sudden and angry passions of the one who does the killing that he does not act with deliberation, but that his mind is in a heat of passion whereby he is incapable of deliberation or reason.

If death, though knowingly or intentionally caused, appears to have been inflicted immediately after provocation deemed by the law adequate to excite

sudden and angry passions in the mind of persons ordinarily constituted, and before sufficient time elapses for deliberation and for the passions to subside or cool, then this fact reduces the offense from murder to manslaughter. The killing is still unlawful, however, because a person is bound to curb his passions and the offense, if all other essential elements exist, is voluntary manslaughter."

Appellant contends that the instruction "refutes the statutory language" of Ind.Code § 35–42–1–3(b), which provides:

"The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder ... to voluntary manslaughter."

He argues that the instruction improperly makes provocation an essential element of voluntary manslaughter and that "sudden heat" may be derived from circumstances other than provocation. No authorities are cited. This instruction was taken almost verbatim from an instruction given in *New v. State*, (1970) 254 Ind. 307, 259 N.E.2d 696, at 702, and approved by this Court in its entirety. Sudden heat must derive from sufficient provocation. There was no error in giving this instruction.

■ (b) State's Instruction No. 8:

"A statute of our state states the defense of intoxication as follows:

It is a defense that the person who engaged in the prohibited conduct did so while he was intoxicated, if the intoxication resulted from the introduction of a substance into his body:

(1) without his consent; or

(2) when he did not know that the substance might cause intoxication.

(b) Voluntary intoxication is a defense only to the extent that it negates specific intent."

The appellant argues that the instruction should not have been given because the defense did not rely on the defense of intoxication. The instruction served only to confuse the jury, he claims. This Court has upheld the giving of an intoxication instruction even though a defendant has not raised the defense of intoxication, as long as there

is evidence of intoxication and specific intent is an issue. *Strickland v. State*, (1977) 265 Ind. 664, 359 N.E.2d 244; *Madden v. State*, (1970) 254 Ind. 628, 261 N.E.2d 847. Since there was evidence that the appellant was intoxicated at the time of the crime, and since the intent of the appellant was a key issue, the instruction was proper.

■ (c) State's Instruction No. 12:

"*Use of Force Relating to Arrest or Escape*

(a) A person other than a law enforcement officer is justified in using reasonable force against another person to effect his arrest or prevent his escape if:

(1) a felony has been committed; and

(2) there is probable cause to believe the other person committed that felony. However, such a person is not justified in using deadly force unless that force is justified under section 2 of this chapter."

The instruction is taken verbatim from Ind.Code § 35–41–3–3. The appellant contends that it was error to give the instruction because there was no evidence, prior to the shooting, to support a finding that he had committed a felony. Although the prosecution attempted to persuade the jury that the appellant had committed burglary, there was no evidence of a theft, appellant argues, and the evidence was undisputed that nothing was missing from the room.

There was evidence that the victim had left his suite in an orderly condition and when he returned to it and surprised the appellant there he found that it had been ransacked. The burglary statute provides in pertinent part:

"A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a class C felony."

It is enough that the person intended to commit a felony. In this case the fact that the room had been ransacked supports the inference that the appellant intended to commit theft. *Anderson v. State*, (1981) Ind., 426 N.E.2d 674. Proof of a completed

theft is not necessary. Since there was evidence that the appellant broke into and entered the room with intent to commit a theft, the instruction on the use of force to effect an arrest or prevent escape was proper. The conviction is affirmed.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.