George J. ALFARO, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 1283S462.

Supreme Court of Indiana.

May 28, 1985.

Joseph S. Irak, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, George Alfaro, was convicted by a jury of murder, Ind.Code § 35-42-1-1 (Burns 1985 Repl.) and was sentenced to the Indiana Department of Correction for a period of thirty years. He

raises the following two issues in this direct appeal:

1. Whether the trial court erred in admitting defendant's statement into evidence; and

2. Whether there was sufficient evidence to sustain the jury's verdict.

A summary of the facts most favorable to the state shows that the body of the victim, Robert Marcinkovitch, was found in a field near Hammond, Indiana, on November 5, 1979. The cause of death was found to be a skull fracture caused by blows from a blunt instrument. Three years later, on November 14, 1982, defendant approached a Hammond police officer he knew, Officer Ronald DiMichelle, and said he had something to say. He told DiMichelle that he had killed someone named "Robert Maravich" two to four years earlier.

Defendant further explained that he and the victim had an argument on the night of the crime and the victim had threatened him with a knife. Defendant then borrowed a car and was driving around when he saw the victim standing on a street corner. He asked the victim to ride with him and get something more to drink. Defendant said that the victim had a knife hidden in his coat sleeve during this ride. At some point, defendant became excited and afraid of the victim and ordered him to get out of the car. Defendant got out of the car, too, and hit the victim on the head with a baseball bat. Then, he put the body into a field.

Defendant told Officer DiMichelle that his conscience had been bothering him and he wanted to tell somebody about this incident. DiMichelle gave this information to the Hammond Detective Bureau the next day and a probable cause warrant was issued for defendant's arrest. Defendant also gave the police a written statement admitting his part in the crime after he was arrested and had waived his *Miranda* rights. He claimed that he did not intend to kill the victim, but only wanted to give him a warning.

I.

Defendant first contends that his written statement was not obtained after a valid waiver of his constitutional rights because he did not understand the seriousness and complexity of the charges against him and that the statement was therefore erroneously admitted into evidence.

■ The record shows that defendant's first statement to the police was completely voluntary since defendant clearly approached Officer DiMichelle on his own initiative and explained that his troubled conscience was the reason for making his confession. It is well settled that voluntary statements which are not the result of custodial interrogation are not within the contemplation of *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and are properly admitted into evidence even when there has been no waiver of constitutional rights. *Cobb v. State* (1980), 274 Ind. 342, 412 N.E.2d 728; *Kennedy v. State* (1977), 267 Ind. 322, 370 N.E.2d 331.

■ The United States Supreme Court specifically stated that there is "no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime...." *Miranda*, 384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726. Volunteered statements are unaffected by *Miranda* because there can be no presumption of compulsion where there is no interrogation. An accused has a right to speak equal to his privilege of silence. *Lane v. State* (1977), 266 Ind. 485, 488, 364 N.E.2d 756, 758. Defendant's oral statement was voluntary and was properly admitted.

The record further shows that when defendant was arrested he was first taken into custody by the East Chicago police. A Gary police officer, who had originally investigated the instant crime, then went to East Chicago to question defendant. The officer testified that he read to defendant a standard waiver of rights form and defendant said he would like to talk about the homicide. The officer then asked defendant if he would be willing to go to the Gary

police station and defendant said yes. After defendant was booked at the Gary police station the officer gave him a copy of the waiver of rights form and again read it to him. Defendant said he understood his rights, signed the waiver form, and initialed each specific right he was waiving. He said he wanted to give a statement and "get it off his chest." The officer then typed defendant's statement and defendant also signed the statement. Defendant specifically stated that he was able to read and write and had an eighth grade education.

■ It is well settled that the question of the admissibility of a statement or confession is controlled by determining from the totality of circumstances whether or not the confession was given voluntarily and not through inducement, violence, threats or other improper influences so as to overcome the free will of the accused. *Massey v. State* (1985), Ind., 473 N.E.2d 146; *Anderson v. State* (1984), Ind., 466 N.E.2d 27.

■ Defendant now contends that he did not understand the full consequences of giving a confession to the police and mistakenly assumed that he had a valid defense of self-defense. He also contends that his signature on the waiver of rights form does not prove he really understood the language on the form. We find no merit to these arguments. The waiver of rights form was admitted into evidence and shows the clear language that was used as well as defendant's initials and signature. There was no evidence of police coercion, violence, threats or other improper influences. Defendant's mistaken assumptions about the validity of a defense do not affect the voluntariness of his statements. In this case, there was ample evidence to show that defendant gave both his oral and written statements voluntarily. There was no error in admitting defendant's statements into evidence.

## II.

■ Defendant next contends that the evidence was not sufficient to sustain his conviction for murder. He argues that there was evidence of both self-defense and sudden heat but not sufficient evidence to show a knowing and intentional killing of the victim. Our standard for reviewing sufficiency claims is firmly established; on appeal the reviewing court does not weigh the evidence or judge credibility. We are constrained to consider only that evidence most favorable to the state, together with all reasonable and logical inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be overturned. *Massey v. State* (1985), Ind., 473 N.E.2d 146; *Zachary v. State* (1984), Ind., 469 N.E.2d 744.

Here, there was evidence that the victim and defendant had argued on the day of the crime and the victim had threatened defendant with a knife at that time. There was also evidence that the victim continually insulted people of Hispanic descent and said he didn't like them. The defendant testified that just before he hit the victim with the bat he saw the light shine on something that he thought was the victim's knife, so that he became really afraid that the victim might kill him. However, there was also evidence which conflicted with defendant's testimony. No knife was found on the victim's body. Furthermore, there was evidence that the victim was walking away from defendant when defendant hit him. The jury was able to consider all of this evidence and was properly instructed on voluntary manslaughter as a lesser included offense of murder and on the definition of sudden heat.

■ It is clear that when the jury in a murder case is instructed on the lesser included offense of voluntary manslaughter, the determination of whether the accused acted upon provocation, in a heat of passion, or acted with a deliberate intent to kill is a question for the jury. *Roell v. State* (1982), Ind., 438 N.E.2d 298; *Hulen v. State* (1980), 274 Ind. 695, 413 N.E.2d 907. The intent to kill may be inferred from the use of a deadly weapon in a manner reasonably calculated to produce death or great bodily harm. *Vasseur v.*

*State* (1982), Ind., 430 N.E.2d 1157. Here, while there was some evidence to support defendant's position that he had acted in sudden heat or killed in self-defense, there was also sufficient evidence to support the jury's finding of an intentional killing.

For all of the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.