Melvin KELLEY, Appellant,

v.

STATE of Indiana, Appellee.

No. 1284 S 476.

Supreme Court of Indiana.

Sept. 16, 1985.

Paul James Newman, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

On May 10, 1984, Defendant-Appellant Melvin Kelley was convicted of Robbery, a class C felony, and of being a habitual criminal. At the conclusion of a jury trial in the St. Joseph Superior Court the Honorable Robert L. Miller, Jr., sentenced Appellant to the Indiana Department of Corrections for a determinate term of five years enhanced by an additional thirty years.

Appellant's argument raises two issues for consideration:

1. whether the trial court erred in admitting out of court statements made by Appellant to the State's witness;

2. whether the jury's verdict is supported by sufficient evidence.

"Shorty" Swoveland was the desk clerk at the Southern Hotel in South Bend. There was slightly over $18.00 in the cash drawer when his shift began. Soon thereafter Appellant appeared at the Hotel seeking a room. Swoveland admitted Appellant

to the lobby and Appellant grabbed him from behind announcing a stick-up. Believing Appellant had a gun, Swoveland opened the cash drawer so Appellant could take the money. Appellant tried to get Swoveland to open the safe but Swoveland did not know the combination. Appellant pushed Swoveland out of the office and Swoveland ran upstairs and called the police.

When the police arrived Swoveland unlocked the door and the police commenced searching for Appellant. A police dog located Appellant locked in a closet, but Appellant refused to come out until after the police shot a fire extinguisher into the closet. At that point Appellant withdrew from the closet saying, "All right, you got me, you got me."

Appellant was advised of his rights and searched, during which search the police found $18.25. Swoveland identified Appellant as the man who robbed him. Appellant was removed from the hotel, and upon arrival at the police station was once again advised of his rights. Appellant declined to make a statement, saying: "No man, I don't think so. You caught me. That's it." Appellant was instructed that if he changed his mind he could make a statement to one of the officers later. He responded: "No, I did it. That's it. You got me. You know, sometimes you do things without really thinking." It is these statements of Appellant to the police officer which are presently at issue.

### I

Appellant alleges the trial court erred in admitting Appellant's out-of-court statements to the State's witness. Appellant does not deny that he made incriminating statements. Instead, he maintains these statements were made after he indicated his desire to remain silent, and were the result of an improper interrogation. As authority Appellant cites *Lane v. State*, (1977) 266 Ind. 485, 488, 364 N.E.2d 756, 758, wherein we held a police officer may not question a suspect once the suspect has exercised his right to remain silent. Appellant also cites *Miranda v. Arizona*, (1966)

384 U.S. 436, 473–74, 86 S.Ct. 1602, 1627–28, 16 L.Ed.2d 694, 722–23 for the proposition that if a defendant indicates he wishes to remain silent the interrogation must cease and any statement given after the privilege is invoked cannot be other than the product of compulsion.

While *Lane* does represent the rule of law cited by Appellant, the case actually bolsters the State's position. There, the defendant was advised of his rights at least twice, stated he did not wish to make a statement, but proceeded to make incriminating remarks and eventually gave a statement and directed the police to the murder weapon. This Court held that since the defendant's rights were orally spelled out with clarity, the defendant's privilege of silence was not transgressed. *Lane*, 266 Ind. at 489, 364 N.E.2d at 759.

Likewise, in the present case, Appellant was advised of his rights at least twice, stated he did not wish to make a statement, but proceeded to make incriminating remarks. Unlike *Miranda*, the remarks in the present case were unsolicited and not brought about due to compulsion. The *Miranda* confession on the other hand was a result of "incommunicado interrogation of individuals in a police dominated atmosphere ... without full warnings of constitutional rights." *Miranda*, 384 U.S. at 445, 86 S.Ct. at 1612.

This Court has repeatedly held incriminating remarks admissible where the defendant volunteered the remark whether or not he has been advised of his rights and where the remark is not in response to police questioning. *Hill v. State*, (1984) Ind., 470 N.E.2d 1332, 1335; *Partlow v. State*, (1983) Ind., 453 N.E.2d 259, 269, *cert. denied*, —— U.S. ——, 104 S.Ct. 983, 79 L.Ed.2d 219, *see New v. State*, (1970) 254 Ind. 307, 259 N.E.2d 696.

Even were this Court to find Appellant exercised his right to remain silent, his comments cannot be found the result of an improper interrogation. Interrogation is the process of questioning by law enforcement officials which lends itself to

obtaining incriminating statements. *Partlow,* Ind., 453 N.E.2d at 269, *citing Escobedo v. Illinois,* (1964) 378 U.S. 478, 485, 84 S.Ct. 1758, 1762, 12 L.Ed.2d 977, 986. In *Johnson v. State* (1978) 269 Ind. 370, 377, 380 N.E.2d 1236, 1240 we held that not every statement of a police officer punctuated by a question mark constitutes an interrogation. The mere advising a suspect of his *Miranda* rights alone does not amount to an interrogation. Here Appellant was merely read his rights and asked if he wished to make a statement. There was no attempt to gain incriminating evidence nor was there any compulsion on the part of the police, thus the comments were properly admitted.

 Appellant's comments were of the nature of a voluntary confession. We have held voluntary confessions properly admitted if they are the product of a free will and not induced by any violence, threats, promises, or other improper influence, *Polk v. State,* (1984) Ind., 467 N.E.2d 666, 669. In the present case there is no evidence, nor does Appellant allege, that his remarks were brought about by violence, threats or promises. Appellant's only argument is that the repeated advisement of his rights constituted an improper influence. There is no merit to this allegation. *Miranda* rights are given to a suspect as a protective measure, assuring him of his constitutional privileges and cannot alone be construed as an improper influence compelling an admission.

## II

Appellant next alleges the verdict is not supported by sufficient evidence. Appellant bases his argument on the contention that his incriminating remarks are inadmissible, thus the only evidence against him is Swoveland's testimony, which Appellant finds inconsistent. Appellant cites *Richardson v. State,* (1979) 270 Ind. 566, 388 N.E.2d 488 for the proposition that a single witness' statements must be unequivocal. Appellant also cites *Gaddis v. State,* (1969) 253 Ind. 73, 251 N.E.2d 658 for an example of a trial court being reversed where the

defendant was convicted solely on evidence of a single witness whose testimony vascillated and was uncertain.

In *Richardson* this Court clearly limited its holding to circumstances where the State's case was entirely dependent on a single witness' identification of the defendant. In the present case the State's case is not only based on Swoveland's identification of Appellant, but also on Appellant's own remarks, and the fact that Appellant was found locked in at the scene of the robbery with an amount of money equal to that stolen in his possession. Furthermore, even though Swoveland's testimony is at points uncertain, the uncertainty regards collateral matters (whether or not Appellant had a gun in his pocket; whether Appellant took the money himself or was handed it by Swoveland). The identification in the present case was not uncertain, as it was in *Richardson.*

*Gaddis* is also distinguished from this case. There we reversed a trial court conviction based on the evidence of a single witness, noting the witness' testimony vascillated and was uncertain. *Gaddis,* 253 Ind. at 79, 251 N.E.2d at 661. However, we went further and noted that the witness' testimony was the result of pressures and threats of prison if he did not testify against the defendant, and that the testimony completely lacked support by circumstantial evidence. Quite the contrary in the present case, there is no evidence that Swoveland was coerced into testifying, and there was plenty of circumstantial evidence with which to connect Appellant and the robbery.

 Where the sufficiency of evidence is challenged on review this Court will neither weigh the evidence nor determine the credibility of witnesses, but rather, will look to the evidence most favorable to the State together with all reasonable inferences therefrom. If there is substantial evidence of probative value from which the trier of fact might reasonably infer guilt beyond a reasonable doubt the conviction will be upheld. *Harris v. State,* (1985) Ind., 480 N.E.2d 932, 937. The facts are clear in the

present case. Appellant was found locked in at the place of the robbery with approximately the amount of cash taken in his possession. Appellant was positively identified by the victim and made incriminating statements himself. Accordingly, there was sufficient evidence to support the verdict.

The trial court is in all things affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and SHEPARD, JJ., concur.