**Jordan EACKLES, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 57S00–8805–CR–502.**

Supreme Court of Indiana.

May 3, 1989.

Douglas J. Atz, Kendallville, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Burglary, a Class C felony, for which he received a sentence of five (5) years, which was enhanced by thirty (30) years by reason of his status as an habitual offender. He also was found guilty of Theft, a Class D felony, for which he received a sentence of two (2) years, the sentences to run concurrently.

The facts are: On October 13, 1986, appellant and codefendants Galligher and Glenn drove in appellant's car to the parking lot of the Publix Shopping Center in Kendallville, Indiana. Galligher left the car and approached two automobiles that were parked in the area. Galligher led the occupants of the vehicles to believe that he was a police officer and asked them to leave the area.

After Galligher returned to appellant's vehicle, Glenn approached the vehicles for the same purpose. After the vehicles left, Glenn took a baseball bat from appellant's car and stated that he was going to steal some shotguns from the store. Appellant told him to "make it quick." Glenn then broke the store window with the bat. Glenn and Galligher entered the store and obtained five shotguns.

As they emerged from the store and started for appellant's vehicle, they noticed a police car approaching. They dropped the guns and started to run toward appellant's car; appellant, however, drove off before they were able to enter. The approaching police officers were able to capture Glenn and Galligher as they attempted to flee on foot. A description of appellant's vehicle was transmitted over the police radio. Officer Dial saw the described vehicle and a chase ensued which reached speeds of sixty miles per hour. The chase eventually ended with appellant being taken into custody.

Appellant claims he should be granted a new trial because he was surprised at trial by the testimony of Officer Franklin, the officer who approached the scene of the crime as Galligher and Glenn exited the store carrying the guns.

He claims that Officer Franklin testified at a pretrial deposition that when he first saw appellant's car it was moving away from the burglarized store. However, during the trial, Franklin testified that the vehicle did not start moving until he was seen approaching, and later, at the hearing on the motion to correct error, he stated that his statement made during the taking of the deposition was the correct statement.

Appellant claims this change of testimony was a surprise to him, and if, as Officer Franklin had first testified, the car was moving when he first saw it, it supported appellant's position that he did not "knowingly" or "intentionally" participate in the burglary. However, the difference in Officer Franklin's testimony at trial and his statement during the taking of the deposition was fully presented to the jury. It was for them to determine which version was correct. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670.

In any event, whether appellant's automobile was in motion when first seen by Officer Franklin is of little moment when one views the entire record in this case. Glenn testified that they were all involved in the burglary and that appellant waited in his automobile while they broke the window and entered the store to obtain the shotguns. It is obvious that for whatever reason appellant drove off as Glenn and Galligher were running toward his car with the shotguns.

The record also discloses that appellant led Officer Dial in a chase before his capture, and when Dial was able to apprehend him, he refused to give his name or answer any other questions. We fail to see how anything as minor as when appellant's car actually started moving could possibly influence the jury in the face of the other evidence in this case. *Scott v. State* (1987), Ind., 510 N.E.2d 170, *cert. denied,* — U.S. ——, 108 S.Ct. 492, 98 L.Ed.2d 490; *Reed v. State* (1987), Ind., 508 N.E.2d 4.

■ Appellant also claims he was surprised by the testimony of Officer Dial that appellant was uncooperative immediately following his arrest. Appellant takes the position that Officer Dial was confusing two of the defendants. However, at the hearing on the motion to correct error, Officer Dial reiterated his testimony that appellant refused to answer his questions, but did state that he was otherwise cooperative. In view of the evidence above recited, we fail to see how such a discrepancy, if it is a discrepancy, could have had any influence upon the jury.

Appellant also claims the testimony of these officers at the hearing on the motion to correct error constituted newly-discovered evidence. If we would assume for the sake of argument that this was, in fact, newly-discovered evidence, we could not say that it would produce a different outcome at a new trial. *Scott, supra; Reed, supra.*

■ Appellant contends there is newly-discovered evidence in that during the hearing on the motion to correct error he discovered that codefendant Galligher had been given prescription drugs prior to his testimony. However, he wholly fails to allege or demonstrate how such a fact would have altered Galligher's testimony or that it had any effect whatever upon his testimony. Galligher was called as a witness for the defense and testified lucidly and at length, stating that he and appellant both went to sleep in the car, and when they awoke, they discovered that Glenn had already broken into the store, and when Galligher went to see what Glenn was doing, the police arrived which caused them to have to run.

It was brought out upon cross-examination that Glenn had already pled guilty and that Galligher's testimony was calculated to clear both appellant and Galligher of any participation in Glenn's burglary of the store. There is no indication in any of Galligher's testimony, either direct or cross, that he ever became confused or had any difficulty in articulating his version of the situation. When one examines the testimony of Glenn and the testimony of Galligher, it becomes a matter of weighing the evidence as to which one to believe. This Court will not invade the province of the

jury by attempting to second-guess their decision in this regard. *Alfaro, supra.*

If we assume as a fact that Galligher did receive prescription medication prior to his testimony, there is no indication in this record that such fact would cause a different result were this case to be retried. We therefore see no reversible error in the denial of the motion to correct error on such a basis.

 Appellant claims there is insufficient evidence in this record to sustain his conviction. Appellant bases this contention on the difference in the testimony between Galligher and Glenn and takes the position that this Court should believe the testimony of Galligher that neither he nor appellant participated in the burglary or had any advance knowledge that Glenn intended to burglarize the store. However, we will not judge credibility on review. *Id.* When one looks at the entire record, one finds sufficient evidence to support the verdict of the jury.

Appellant contends the trial court erred in admitting evidence of his prior criminal record, which was introduced by the State to support its allegation that appellant was an habitual offender. In appellant's original brief, he claims that the exhibits were not properly certified. However, an examination of the exhibits discloses that they were in fact properly certified.

 In his reply brief, appellant states that he was misunderstood in his original brief and what he intended to say was that he was not tied to those exhibits. However, Senior Parole Officer Richmond H. Sigmond identified appellant as the person he supervised on probation and identified State's Exhibit 7 as the record of one of appellant's prior convictions which resulted in his supervision of appellant. Exhibit 8 was identified as appellant's fingerprints which were taken on February 2, 1987. Exhibit 9 was properly certified as a record from the Department of Correction concerning appellant's commitment to them.

John Vanderkolk testified that he had compared the fingerprints on the Department of Correction's record, Exhibit 9, with the fingerprints on Exhibit 8 and that they were made by the same person. Exhibit 10 consists of properly certified records from the state of Arkansas showing appellant's conviction of a felony in that state. These records also contained appellant's fingerprints. There is ample evidence in this record to support the jury's finding that appellant is an habitual offender.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.