**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARK A. BATES**
Lake County Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KEVIN CORTEZ BROWN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1107-CR-320 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Thomas P. Stefaniak, Jr., Judge
Cause No. 45G04-1005-MR-0008

**July 3, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARTEAU, Senior Judge**

## STATEMENT OF THE CASE

Kevin Brown brings this interlocutory appeal from the trial court's denial of his motion to suppress his confession and the evidence obtained as a result. We affirm.

## ISSUES

Brown presents two issues for our review, which we restate as:

I.   Whether the trial court erred by denying Brown's motion to suppress based upon its finding that Brown did not invoke his right to remain silent and his right to counsel.

II.  Whether the trial court erred by denying Brown's motion to suppress based upon its finding that Brown voluntarily waived his rights and gave a statement to the police.

## FACTS AND PROCEDURAL HISTORY

Veranle Givens was shot and killed on May 22, 2010 at a truck stop in Gary, Indiana. There were no eyewitnesses to the shooting. On May 25, 2010, police arrested Brown and placed him in a holding cell at the Gary Police Department. On May 26, 2010, Detective Hemphill went to Brown's holding cell and asked him if he wanted to talk. Brown responded in the affirmative. Detective Hemphill took Brown into an interview room where he read Brown his rights. Brown did not want to talk and wrote "Refused" on the rights form. On May 27, 2010, Detective Hemphill again went to the holding cell and asked Brown if he wanted to talk. Brown responded affirmatively and was taken to the interview room. Detective Hemphill again read Brown his rights. Brown initialed and signed the rights form and made a statement regarding the shooting of Givens. Brown later filed a motion to suppress his statement and the evidence

2

obtained as a result of his statement. Following a hearing, the trial court denied Brown's motion. Brown then filed this interlocutory appeal of the trial court's denial of his motion to suppress.

## DISCUSSION AND DECISION

We review a trial court's denial of a motion to suppress evidence similar to that of other sufficiency issues. *Meek v. State*, 950 N.E.2d 816, 819 (Ind. Ct. App. 2011), *trans. denied*. We do not reweigh the evidence, and any conflicting evidence is considered in a light most favorable to the decision of the trial court. *Trotter v. State*, 933 N.E.2d 572, 578-79 (Ind. Ct. App. 2010). In addition, we also consider uncontested evidence that is favorable to the defendant. *Id.* at 579. We will affirm the decision of the trial court if it is supported by substantial evidence of probative value. *Meek*, 950 N.E.2d at 819.

## I. INVOCATION OF RIGHTS

Brown first contends that the trial court erred by denying his motion to suppress because he invoked his right to counsel and his right to remain silent, but his requests were ignored.

To safeguard a defendant's Fifth Amendment right against self-incrimination during custodial interrogation, the United States Supreme Court requires the police to inform persons subjected to custodial interrogation of their right to remain silent and their right to the assistance of counsel during the interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). When an individual invokes his right to counsel, further interrogation must cease until counsel has been made available to him,

3

unless the individual initiates further communication, exchanges, or conversations with the authorities. *Edwards v. Arizona*, 451 U.S. 477, 484-85, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981). Applicability of the *Edwards* rule requires courts to determine whether the accused actually invoked his right to counsel. *Davis v. United States*, 512 U.S. 452, 458-59, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994). This is an objective determination. *Id.* at 459. Invocation of the right to counsel requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney. *Id.*

Like invocation of the right to counsel, invocation of the right to remain silent must be unambiguous. *Berghuis v. Thompkins*, 560 U.S. ---- , ----, 130 S. Ct. 2250, 2260, 176 L. Ed. 2d 1098 (2010). Where an individual has invoked his right to remain silent, further questioning by the authorities is not precluded as long as the individual's right to cut off questioning is "scrupulously honored." *Moore v. State*, 498 N.E.2d 1, 9 (Ind. 1986).

In the present case, Detective Hemphill testified at the hearing on the motion to suppress that on May 26, 2010, the day after Brown was arrested, he went to the holding cell and asked Brown if he wanted to talk about his case. Brown responded in the affirmative, and Detective Hemphill took Brown upstairs to an interview room where he read the *Miranda* rights form to Brown. Detective Hemphill read each individual paragraph to Brown, and, after each paragraph, Brown indicated that he understood the rights enumerated in that paragraph. At the bottom of the form is a section titled

4

"WAIVER" followed by a paragraph stating that the signatory has read his rights, understands them, and is waiving his right to an attorney. Defendant's Ex. 1. Detective Hemphill read this waiver paragraph to Brown, and, under the waiver section, Brown wrote "Refused" on the signature line. Detective Hemphill testified that although he did not remember Brown's precise wording, Brown indicated he did not want to talk at that time. Detective Hemphill then returned Brown to his cell.

Detective Hemphill further testified that the next day, May 27, 2010, he initiated contact with Brown and asked him if he wanted to talk. Brown responded in the affirmative, and Detective Hemphill again took him up to the interview room. Detective Hemphill read to Brown a *Miranda* form, identical to the form from the previous day, and this time Brown initialed beside each paragraph. Under the section marked "WAIVER," Brown signed his name and then discussed the shooting of Givens with Detective Hemphill. After discussing the case for a period of time, Brown told Detective Hemphill he wanted to make a call to his spiritual advisor. After making a call to his spiritual advisor, Brown was given a meal from a fast food restaurant, which he ate prior to giving his statement. Brown then went back into the interview room with Detective Hemphill and made his statement, which was typed by Detective Arnold. At the conclusion of his statement, Brown read the statement and signed it.

Following Brown's statement, his mother was called and asked to come to the station because Brown disclosed during his statement that the handgun used in the

5

shooting of Givens was hidden in his mother's vehicle. Brown's mother came to the station and gave consent for a search of her vehicle, in which a handgun was recovered.

In contrast, Brown testified in support of his motion to suppress that at the time of his booking on May 25 he asked Officer Manuel, the booking officer, if he could make a phone call to his attorney. He stated that he had a number of attorneys' business cards in his wallet from which he planned to choose but that he was not allowed to make a call.

Brown further testified that on May 26, Detective Hemphill retrieved him from the holding cell but did not ask him if he wanted to talk. Brown stated that once they reached the interview room, Detective Hemphill showed him the rights form, and he stated that he wanted to speak to an attorney. Brown testified that Detective Hemphill told him there was no need to worry and he just wanted to ask Brown a few questions. Brown again requested to speak to an attorney. Detective Robertson then entered the room and stated to Brown that they had witnesses, that Brown should tell them about the shooting, and that if he refused, they would charge him with homicide. According to Brown, he responded by again requesting an attorney. Detective Hemphill told Brown that they could help him if he would talk to them. Both detectives then left the room for several minutes, and, when they returned, Brown asked to call his family. When that request was denied, Brown asked to call his spiritual advisor. He also renewed his request to contact an attorney and stated that he did not want to say anything else. He testified that he wrote "Refused" on the waiver of rights form and was returned to his cell.

On cross-examination, Brown clarified that he wrote "Refused" on the rights form at the direction of Detective Hemphill. He stated that he had told Detective Hemphill he was not going to sign the form or say anything, so Detective Hemphill told him to write "refused" on the form.

Brown testified that on the following morning, May 27, Detective Hemphill took him back to the interview room where he renewed his request to contact an attorney. The officers told him that they had evidence linking him to the crime and that they wanted to speak to his mother, who was wanted on a felony warrant. Brown stated that he again asked for an attorney. Detective Arnold entered the room and talked to Brown about religion, and Brown again asked for an attorney. Brown testified that Detective Arnold denied his request for an attorney but allowed him to call his spiritual advisor. Brown testified that following that phone call, he again requested an attorney, whereupon Detective Hemphill told him there was no need for him to worry and that they would make a deal with him not to pick up his mother on the warrant. At that point, Brown discussed his demands with the detectives, signed the waiver of rights form, and gave his statement regarding the shooting.

Officer Manuel, Detective Robertson, and Detective Arnold also testified at the suppression hearing. Officer Manuel testified that Brown did not ask to make a phone call at booking. Detective Arnold stated that prior to giving his statement on May 27, Brown asked to speak to his spiritual advisor and that he was allowed to do so. All three officers testified that Brown never asked to speak to an attorney.

Our standard of review with regard to the denial of a motion to suppress forbids us to reweigh the evidence and requires us to view conflicting evidence in the light most favorable to the trial court's decision. *Trotter*, 933 N.E.2d at 578-79. It is clear that Brown's evidence and the State's evidence at the suppression hearing directly conflict. Brown's self-serving testimony shows that he requested an attorney several times; however, the testimony of the State's witnesses discloses that Brown never asked for an attorney. In its order denying Brown's motion to suppress, the trial court stated that "the versions of the police and defendant vary greatly" and that "the Court finds the police personnel who testified to be more credible than the defendant." Appellant's App. p. 70. Brown's argument on appeal is a request to reweigh the evidence and to view the conflicting evidence in a light unfavorable to the trial court's ruling, which we will not do. *See, e.g.*, *Lane v. State*, 266 Ind. 485, 364 N.E.2d 756, 759 (1977) (stating that appellate court may not reweigh evidence and disturb trial court's finding based upon conflicting evidence where trial court heard evidence, much of which was conflicting, at pre-trial suppression hearing).

In addition to his suppression hearing testimony that he requested an attorney, Brown asserts that his act of writing "Refused" on the rights form was also a request for an attorney. We disagree. Moreover, Brown himself testified that he wrote "Refused" at the direction of Detective Hemphill when he told the detective that he did not want to talk at that time. This writing at the direction of the detective does not satisfy the requirement that the invocation of the right to counsel be unambiguous. *See, e.g.*, *Taylor v. State*, 689

8

N.E.2d 699, 703 (Ind. 1997) (holding that defendant's statement of "I guess I really want a lawyer, but, I mean, I've never done this before so I don't know" was not an unambiguous request for counsel). We find no error with the trial court's ruling.

With regard to Brown's right to remain silent, the evidence shows that on May 26 Brown was given his *Miranda* rights, acknowledged he understood them, including his right to remain silent, and declined to talk to Detective Hemphill. Detective Hemphill testified that Brown indicated he did not want to talk at that time. At the direction of Detective Hemphill, Brown wrote "Refused" on his waiver of rights form. Detective Hemphill then returned Brown to his cell. The following day, Detective Hemphill asked Brown if he wanted to talk, Brown indicated his willingness to talk, and he was taken to the interview room. There, Brown was again informed of his rights. He initialed each paragraph, signed the waiver, and gave a statement.

Although initially on May 26, Brown refused to sign the waiver form, that refusal does not necessarily constitute an invocation of his right to remain silent. *Auten v. State*, 542 N.E.2d 215, 218 (Ind. Ct. App. 1989) (holding that a defendant *may* invoke his right to remain silent by refusing to sign a waiver of rights form, but such refusal may not *necessarily* serve as an invocation). An assertion of the *Miranda* right to remain silent must be clear and unequivocal. *Wilkes v. State*, 917 N.E.2d 675, 682 (Ind. 2009). Mere expressions of reluctance to talk do not invoke the right, and the defendant's statements are considered as a whole. *Id.* At the time that Brown, at the direction of Detective Hemphill, wrote "Refused" on the waiver form, he indicated to Detective Hemphill that

9

he was not willing to talk at that time. The evidence here establishes that this was not an unambiguous invocation of Brown's right to remain silent but rather an indication that Brown was not inclined to speak with the officers at that point in time. *See, e.g.*, *Lane*, 364 N.E.2d at 759 (holding that although defendant at one point stated he did not wish to make a statement at that time, this was not such an assertion of his right to remain silent as would prohibit police officers from later asking if he wished to make a statement).

Nevertheless, even if Brown's refusal to sign the waiver of rights form on May 26 invoked his right to remain silent, initiation of further questioning by Detective Hemphill on May 27 was not precluded as long as Brown's right to cut off questioning was scrupulously honored. *See Moore*, 498 N.E.2d at 9 (stating that where an individual has invoked his right to remain silent, it has been held that there is not a per se rule prohibiting the authorities from ever initiating a discussion or further questioning the individual on the subject). The evidence shows that once Brown indicated to Detective Hemphill on May 26 that he did not want to talk, Detective Hemphill returned him to his cell. No further contact was made on that day. The next day, May 27, Detective Hemphill asked Brown if he wanted to talk, and Brown responded affirmatively. Detective Hemphill took Brown to the interview room where he again read the rights form to Brown, and Brown evidenced his understanding of his rights by initialing next to each advisement. The interval of a day between the two interviews demonstrates that the officers fully respected Brown's right to cut off questioning. The evidence supports the

10

conclusion that Brown's right to remain silent was scrupulously honored.  Accordingly, there is no error here.[1]

## II. VOLUNTARINESS OF WAIVER OF RIGHTS

Brown also claims that the trial court erred by denying his motion to suppress his statement because he did not freely and voluntarily waive his rights.  More particularly, Brown claims that his statement was not voluntary because it was obtained by promises and threats from the police and by the withholding of food.

Under the United States Constitution, the State must prove by a preponderance of the evidence the voluntariness of the defendant's confession.  *Clark v. State*, 808 N.E.2d 1183, 1191 (Ind. 2004).  Voluntariness is determined in light of the totality of the circumstances, including the length, location, and continuity of the interrogation, and the maturity, education, physical condition, and mental health of the defendant.  *Wilkes*, 917 N.E.2d at 680.  In order to determine that a confession was voluntary, the court must conclude that inducement, threats, violence, or other improper influences did not overcome the defendant's free will.  *Clark*, 808 N.E.2d at 1191.  The trial court's determination is reviewed on appeal in the same way as other sufficiency matters.  *Id.*

First, Brown directs us to his testimony at the suppression hearing regarding his desire not to be jailed in Indiana or Illinois.  Brown testified he told the police that if he

---

[1] On appeal, Brown also argues that his rights to counsel and to remain silent under Article 1, Sections 13 and 14 of the Indiana Constitution were violated.  However, Brown has waived this claim.  In his motion to suppress filed with the trial court, Brown claimed that his rights under Article 1, Section 11 were violated.  It is well-settled that a defendant may not argue one ground for objection at trial and then allege a different basis of error on appeal.  *Turner v. State*, 953 N.E.2d 1039, 1058 (Ind. 2011).

11

talked to them, he wanted an agreement that he would not be placed in jail in Illinois or Indiana because he had previously been a confidential informant and individuals on whom he had provided information would be housed in jails in those two states.

Where a promise of leniency results from a specific request by the defendant, as a pre-condition for making a statement, rather than being initiated by the State, the voluntariness of the statement is not impaired thereby. *Collins v. State*, 509 N.E.2d 827, 830 (Ind. 1987). The evidence shows that Brown initiated this request for an agreement; thus, we conclude it did not affect the voluntariness of his statement.

Brown also points to promises he alleges the police made prior to him making his statement. He claims the officers promised that he would not be charged with stealing a car and that his mother would not be arrested on an outstanding felony warrant.

Brown testified that Detective Hemphill stated to him that if he told them who was involved and what happened with the shooting of Givens, the warrant for his mother and the car theft charges would be "gone." Tr. p. 104. Detectives Arnold, Hemphill, and Robertson, on the other hand, all testified that no one threatened Brown or made any promises to Brown to get him to make his statement. With specific regard to Brown's mother, Detectives Hemphill and Arnold both testified that no threat was conveyed to Brown regarding his mother being picked up on a warrant if he did not provide information on the shooting.

Additionally, Brown asserts that food was withheld and that he was not fed for the first forty-three hours that he was held in the Gary city jail. Brown testified that when he

12

asked Detective Hemphill on May 26 if he was going to get anything to eat, Detective Hemphill told him there was no food at the Gary city jail.

Even according to his own testimony, Brown was not taken into custody on May 25 until between 7:00 and 8:00 p.m. Detective Arnold testified that he is familiar with the feeding schedule at the jail and that inmates are fed once during the 8:00 a.m. to 4:00 p.m. shift and once during the 4:00 p.m. to 12:00 a.m. shift. Detectives Hemphill, Robertson and Arnold all confirmed Brown never complained of being hungry. Brown and all the officers testified that he was fed a meal from a fast food restaurant on the afternoon of May 27 prior to giving his statement, and Detective Arnold testified that this meal was not requested by Brown but was offered by the detectives.

Here, Brown's testimony conflicts with that of the detectives. He concedes in his brief that "[n]ormally, the fact that there is conflict in the testimony would defeat Brown's claim." Appellant's Br. p. 21. However, Brown further argues that at a hearing prior to the suppression hearing, Detective Arnold testified that he knew there was a warrant for Brown's mother. Brown states that this knowledge "gives credence" to Brown's claim that the police threatened to arrest his mother and that this implied threat of arrest is proof that Brown's confession was not voluntary. *Id.* at 21. We cannot agree. Under our standard of review, we are forbidden to reweigh the evidence. Having listened to Brown's live testimony and observed his demeanor, the trial court found that he was not a credible witness and stated such in its order. Under the totality of the circumstances

13

in this case, the materials on appeal support the trial court's conclusion that Brown's confession was voluntary.[2]

## CONCLUSION

Based on the foregoing discussion and authorities, we conclude that the trial court did not err in denying Brown's motion to suppress.

Affirmed.

RILEY, J., and KIRSCH, J., concur.

---

[2] For the same reasons that we discuss in Footnote 1, *supra*, Brown's state constitutional argument regarding the voluntariness of his confession is waived.